**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket Nos. 45117 & 45118**

| | |
|---|---|
| STATE OF IDAHO )<br><br>       Plaintiff-Respondent, )<br><br>v. )<br><br>JERSSON NEFTALY ROQUE MEDINA )<br><br>       Defendant-Appellant. ) | **Boise, January 2019 Term**<br><br>**Filed: August 27, 2019**<br><br>**Karel A. Lehrman, Clerk** |

Appeals from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Stephen S. Dunn, District Judge.

The district court's judgment of conviction of trafficking heroin is <u>affirmed</u>. The judgment of conviction of conspiracy to violate the Uniform Controlled Substances Act is <u>vacated</u> and <u>remanded</u>.

Nevin, Benjamin, McKay & Bartlett, Boise, for appellant Jersson Neftaly Roque Medina. Dennis Benjamin argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho. Jeffery D. Nye argued.

---

STEGNER, Justice.

Following a jury trial, Jersson Neftaly Roque Medina (Medina) was convicted of trafficking heroin and conspiracy to violate the Uniform Controlled Substances Act.[1] The charges were brought through two separate cases that arose out of the same set of facts. The two cases were consolidated and tried together. Medina now appeals his convictions, arguing that (1) fundamental error occurred when he appeared before the jury in chains; (2) fundamental error occurred when the jury instruction listing possible overt acts made in the furtherance of the

---

[1] At the outset, we question whether "conspiracy to violate the Uniform Controlled Substances Act" was the appropriate way to charge Medina under these circumstances. The Uniform Controlled Substances Act is 120 pages in length in its current iteration. There are fifty-seven sections of the Act, not counting subparts. Medina was found guilty of violating Idaho Code section 37-2732B(a)(6)(C), which is known as "trafficking in heroin." Accordingly, the appropriate code section to charge Medina with conspiracy would have been Idaho Code section 37-2732B(b). At a minimum, we do not approve of the practice of generically charging someone with "conspiracy to violate the Uniform Controlled Substances Act" without referring to a specific section of the Idaho Code. However, because Medina has not challenged the lack of specificity in the charging document, we need not address this issue.

conspiracy listed numerous acts that did not constitute a proper basis for him to have been found guilty; and (3) there was insufficient evidence to establish the agreement element of the conspiracy charge. For the following reasons, we affirm Medina's judgment of conviction on the trafficking charge and vacate the judgment of conviction on his conspiracy charge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After a police-initiated heroin buy, both Medina and Sharon Bernal-Valadez (Valadez) were arrested in Chubbuck, Idaho, on April 14, 2016. The facts are as follows.

In May of 2015, Logan Joyce (Joyce), a heroin dealer in the Pocatello area, would travel to Salt Lake City, Utah, to purchase heroin to sell in Idaho. Joyce would then return to his home in Chubbuck and sell the heroin in Pocatello. Joyce purchased the heroin in Salt Lake City at a homeless shelter. After doing this for some time, Joyce got to the point where he wanted to sell more than his then-supplier could provide. At this point, Joyce's supplier introduced him to Medina. By late March 2016, Joyce would contact Medina every couple of weeks to purchase substantial quantities of heroin. Joyce would tell Medina how much money he had, and Medina would inform him how much heroin Joyce could purchase with that amount of money. Medina would typically transport the corresponding quantity of heroin from Salt Lake City to Chubbuck, where Joyce would pay Medina the agreed-upon amount. A typical transaction at that point in time involved approximately 130 grams of heroin for $8,000. On occasion, Joyce would travel to Salt Lake City to pick up the heroin.

On either April 9 or 10 of 2016, Joyce met with Medina at Joyce's apartment in Chubbuck to buy heroin. Joyce paid Medina $8,000 for approximately 130 grams of heroin. The transaction was set up through an exchange of text messages.

Unbeknownst to Joyce, months prior to this transaction, Detective Lee Edgley (Edgley) received information that Joyce had been distributing heroin and began investigating Joyce. During the investigation, undercover law enforcement officers made several controlled purchases of heroin from Joyce. After the controlled buys, a search warrant was obtained and law enforcement searched Joyce's residence on April 12, 2016, a few days after Joyce's meeting with Medina. Approximately 153 grams of heroin were seized from Joyce's apartment. Joyce was arrested.

In his post-arrest interview, Joyce showed Edgley a text message conversation referencing Joyce wiring money to an account in Valadez's name in order to pay Medina for the

2

heroin. At that time, Joyce also showed Edgley the most current phone number he had to contact Medina.

On April 13, 2016, after Joyce was booked into jail and a search warrant for Joyce's phone was obtained, Edgley began a text conversation with the number Joyce had told him was Medina's. Edgley arranged to purchase 130 grams of heroin, which would be delivered to "Joyce" the next day for $8,000, with $7,000 paid upfront and an additional $1,000 that would be paid at a later time. The text from Medina's number replied that 130 grams of heroin would be delivered around 5:00 p.m. on April 14, 2016.

On April 14, 2016, after receiving a text message informing him the delivery was close, Edgley, along with other detectives, saw a vehicle registered to Valadez pull into Joyce's apartment complex. The detectives then surrounded the vehicle and removed Valadez and Medina. As Medina was getting out of the vehicle, Edgley seized Medina's phone. He then used Joyce's phone to call the number he had been texting to set up the drug deal. Medina's phone rang, demonstrating that it had been used, presumably by Medina, on the other end of the drug deal.

A canine unit was called and alerted on the car; Medina and Valadez were handcuffed and placed in the back seat of a marked police car. Unbeknownst to Medina and Valadez, the police were recording their conversation. While in the police car, Medina asked Valadez if the officers had found "it" on her. Valadez told Medina to "be quiet." Medina apparently asked again if Valadez still had the drugs. Valadez replied, "Yes, it's here."

Eventually, a female officer arrived and took Valadez from the police car. The officer searched Valadez. That search uncovered approximately 126 grams of heroin (in gross weight including the packaging). Valadez testified that she had placed the package of heroin in her pants at the direction of Medina, knowing the package contained drugs.

On May 19, 2016, a Criminal Information was filed charging Medina with the crime of trafficking in heroin, a violation of Idaho Code section 37-2732B(a)(6)(C). The information alleged that Medina possessed, manufactured, delivered, or knowingly possessed at least twenty-eight grams of heroin. On June 16, 2016, a separate case arose from a second Criminal Information charging Medina with the crime of conspiracy to violate the Uniform Controlled Substances Act, pursuant to Idaho Code sections 37-2732 and 18-1701. That Information alleged that Medina conspired with Valadez, Joyce, or other unnamed people, and agreed to traffic

3

heroin on or between April 2 and 14, 2016. The two separate charges arose from the same set of facts.

After a hearing and upon stipulation of the parties, the district court ordered the two cases be tried together. A jury found Medina guilty of both charges. On April 20, 2017, the district judge entered judgments of conviction and sentenced Medina to twenty years in the penitentiary with fifteen years determinate, on each charge. The sentences were ordered to run concurrently. Medina timely appealed both convictions.

## II. STANDARD OF REVIEW

Alleged constitutional errors during trial that are not followed by a contemporaneous objection "must be reviewed under the fundamental error doctrine." *State v. Bernal*, 164 Idaho 190, 193, 427 P.3d 1, 4 (2018) (citing *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010)). (The fundamental error standard is produced below.) This Court reviews issues of law *de novo*. *State v. Eliasen*, 158 Idaho 542, 546, 348 P.3d 157, 161 (2015) (citing *State v. Goggin*, 157 Idaho 1, 4, 333 P.3d 112, 115 (2014)).

## III. ANALYSIS

### A. It was not fundamental error for Medina to appear in chains before the jury.

At trial, Joyce identified Medina in the courtroom by stating that Medina was "wearing a white long-sleeve shirt, orange Crocs, *chains*, and a tan jumpsuit." (Italics added.) A second witness, Sergeant Todd Orr (Orr), corroborated Joyce's identification. Medina concedes that no objection was made when he appeared before the jury in chains and jail garb[2] and that the fundamental error test controls. He nevertheless maintains that all three elements of the fundamental error test have been satisfied and a new trial is required. The State counters that Medina has failed to prove any elements of the fundamental error test.

In order to demonstrate fundamental error, a defendant

bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. If the defendant persuades the

---

[2] As can be gleaned from the testimony of Joyce and Orr, Medina was also apparently dressed in jail garb during trial. However, Medina has not challenged this aspect of his trial.

4

appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

*Perry*, 150 Idaho at 228, 245 P.3d at 980 (2010); *see also State v. Hall*, 163 Idaho 744, 821, 419 P.3d 1042, 1119 (2018), *reh'g denied* (June 28, 2018) (unobjected-to use of physical restraints reviewed for fundamental error). Here, Medina cannot satisfy the first prong of the fundamental error test because there is no evidence that he was compelled by the district court to wear shackles.

Medina claims that he had a constitutional right to be free from shackles in front of the jury and that he did not waive that right. Medina relies on *Deck v. Missouri*, 544 U.S. 622 (2005) for the articulation of this right. In response, the State relies on *Estelle v. Williams*, 425 U.S. 501 (1976) for the proposition that in order to establish constitutional error, the appearance in shackles had to be compelled. The State thus posits that Medina cannot demonstrate constitutional error satisfying the first prong of the fundamental error test because his failure to object to his shackles necessarily undermines his ability to show he was compelled to appear at trial in shackles. For this conclusion, the State argues the compulsion requirement regarding jail clothes set out in *Estelle* should be extended to physical restraints. We hold that the State is correct in this regard, and evidence demonstrating compulsion to wear shackles must be present in order to constitute constitutional error.

In *Estelle*, the U.S. Supreme Court held that when an attorney failed to object to a defendant's jail garb at trial, no constitutional violation occurred. 425 U.S. at 512. The Supreme Court reasoned that the failure to object to the jail garb "negate[d] the presence of compulsion necessary to establish a constitutional violation." *Id.* at 513.

In 2006, the U.S. Supreme Court ruled on the related issue of a defendant appearing in front of a jury in shackles. *Deck*, 544 U.S. at 629. *Deck* held, "[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id. Deck* held that an accused has a constitutional right to appear at trial without visible physical restraints, absent a finding that the visible restraints were necessary. *Id.* The Supreme Court found the following as possible justifications for requiring shackles: courtroom security; peace and decorum of the tribunal; potential escape risk; or similar concerns. *See id.* at 628.

The unqualified language used by the Supreme Court in *Deck* suggests that *any* absence of trial court findings regarding shackles would amount to a constitutional violation—whether or not an objection was raised by the defendant. Such a reading would both impute a duty on the trial judge to make findings regarding shackles even without any prompting from defense counsel and would imply that errors regarding shackles do not require the same compulsion established in *Estelle* for jail garb. However, defense counsel in *Deck* objected to the shackles, and the trial judge ordered the defendant to wear shackles notwithstanding the objection. *Id.* at 625. Thus, *Deck* may have presupposed the compulsion requirement established in *Estelle* but did not explicitly state as much. This Court now holds the compulsion requirement from *Estelle* applies to shackles, despite the noted difference that "[u]nlike physical restraints, . . . compelling an accused to wear jail clothing furthers no essential state policy." *Estelle*, 425 U.S. at 505.

First, refusing to apply the compulsion requirement to shackles would impute a duty on the trial court which has not previously existed. This concern was addressed in *Estelle*:

> [T]he trial judge [cannot] be faulted for not asking the respondent or his counsel whether he was deliberately going to trial in jail clothes. . . . Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system.

*Id.* at 512.

*Estelle*'s articulation of the trial court's role and the determination to apply the compulsion requirement to shackles comports with this Court's established rule that trial courts make appropriate findings regarding restraints. This Court has stated that "the trial judge must, in fulfilling his duty to preside over the trial, decide the question [of whether a defendant must remain in restraints] for himself." *State v. Crawford*, 99 Idaho 87, 94, 577 P.2d 1135, 1142 (1978)). This Court recognized in *Crawford* the duty of the trial court is not one to *sua sponte* inquire when a defendant appears before the jury in jail garb or restraints. The trial court's duty is to "decide the question" regarding a defendant's appearing in restraints before a jury. The essence of deciding a "question" is for the court to be presented with an issue to resolve— through a defense objection or motion in that regard.

Additionally, extending the compulsion requirement to shackles furthers this Court's policy to "reinforce the judicial preference for contemporaneous objections before the trial court[,]" which "prevents the litigant from sandbagging the court . . . ." *Perry*, 150 Idaho at 220,

6

224, 245 P.3d at 972, 976. To hold otherwise would provide an incentive to defendants to remain silent about visible shackles in the hope that the trial court neglects to make *sua sponte* findings, and, in the event of an unfavorable outcome, allege error on appeal. Accordingly, we hold that failing to object to visible shackles undermines the required compulsion to amount to a constitutional violation; such a holding "encourage[s] the making of timely objections that could result in the error being prevented or the harm being alleviated." *Id.* at 226, 245 P.3d at 978.

Importantly, none of this means that a district court cannot, or should not, address the issue of shackles in its courtroom. Given that the use of shackles is inherently prejudicial, trial courts should take an active role in ensuring a substantively and procedurally fair proceeding. Accordingly, this Court encourages judges to address, *sua sponte* if necessary, any issues relating to clothing or shackles in the presence of the State and defendant on the record prior to the jury being empanelled and obviously outside the jury's presence.

As a result, Medina's failure to object to his visible shackles "is sufficient to negate the presence of compulsion necessary to establish a constitutional violation" and prevents him from meeting his burden regarding the first prong of the fundamental error test. *Estelle*, 425 U.S. at 513.

**B.    Fundamental error occurred by including multiple legally insufficient overt acts in Jury Instruction No. 17.**

Medina contends that Jury Instruction No. 17, regarding his conspiracy conviction, included multiple erroneous overt acts, which amounted to fundamental error. Medina concedes the instruction was not objected to; thus, review of the instruction is subject to the fundamental error test. The State argues that any error in the instruction was harmless.

"When a defendant fails to object to a jury instruction, [this Court] . . . review[s] the jury instruction for fundamental error" under *Perry*. *State v. Adamcik*, 152 Idaho 445, 472, 272 P.3d 417, 444 (2012) (citations omitted). However, the initial inquiry is whether the jury instruction was erroneous at all. *State v. Skunkcap*, 157 Idaho 221, 227, 335 P.3d 561, 567 (2014); *State v. Carver*, 155 Idaho 489, 493, 314 P.3d 171, 175 (2013). This Court reviews "the trial court's jury instructions *de novo* to determine 'whether, when considered as a whole, they fairly and adequately present the issues and state the applicable law.'" *State v. Dunlap*, 155 Idaho 345, 364, 313 P.3d 1, 20 (2013) (quoting *Adamcik,* 152 Idaho at 472, 272 P.3d at 444). "Whether the instruction was erroneous will depend upon how a reasonable juror would have interpreted the

7

instruction." *Skunkcap*, 157 Idaho at 227–28, 335 P.3d at 567–68 (citing *State v. Hairston,* 133 Idaho 496, 515, 988 P.2d 1170, 1189 (1999)).

"[A] conspiracy is established upon proof beyond a reasonable doubt that there is an agreement between two or more individuals to accomplish an illegal objective, coupled with one or more overt acts in the furtherance of the illegal purpose . . . ." *State v. Smith*, 161 Idaho 782, 787, 391 P.3d 1252, 1257 (2017) (alteration in original) (quoting *State v. Garcia*, 102 Idaho 378, 384, 630 P.2d 665, 671 (1981)), *reh'g denied* (Apr. 20, 2017). Thus, an overt act must be (1) committed by one of the coconspirators (i.e., someone who is a party to the agreement) and (2) the act must be done in furtherance of the illegal purpose. *Id.*

The jury instruction in question required the jury to find the following:

[That] one of the parties to the agreement performed at least one of the following acts:
1. On or about April 12, 2016, a search warrant was executed at apartment at 4170 Hawthorne in Chubbuck, Idaho belonging to JOYCE. During the search law enforcement seized approximately 157 grams of Heroin, JOYCE's cell phone and numerous other items.
2. JOYCE provided detectives with information, including the phone number (716-773-9155) of the person ("Jeffrey") from whom JOYCE had previously purchased Heroin.
3. JOYCE's phone contained a text message from JOYCE to [Valadez] indicating JOYCE had wired $3,000 to [Valadez] on or about April 2, 2016.
4. On or about April 13-14, 2016, detectives used JOYCE's phone to contact the above phone number and arranged to purchase 130 grams of Heroin for $8,000 from "Jeffrey."
5. On or about April 14, 2016, [Valadez] drove a vehicle to 4170 Hawthorne in Chubbuck, Idaho and parked.
6. MEDINA, aka "Jeffrey," was a passenger in the vehicle.
7. MEDINA's cell phone was removed from his hands; a detective called the above number and the phone seized from MEDINA rang with the detective's phone number visible on the screen.
8. MEDINA told detectives he was there to collect $1,000 from JOYCE and that he and [Valadez] bring Heroin to Pocatello from Utah.
9. [Valadez] was searched and approximately 127 grams of Heroin [sic] were discovered on her person.
[ ] and such act was done for the purpose of carrying out the agreement.

Medina contends that none of the listed acts, for one reason or another, support a guilty verdict of conspiracy. The State admitted that "at least some of these acts should not have been included in the jury instructions[;]" nevertheless, the State argues that even if some of the acts were

8

invalid, Medina cannot carry his burden under the fundamental error analysis and show that the error was harmful.

The State admits act 1 is invalid as it was undertaken by law enforcement, not by a coconspirator. Act 2 is also invalid as the act of Joyce cooperating with police officers cannot be said to be in furtherance of an illegal purpose. Act 4 describes actions of only law enforcement and is therefore also invalid. Act 7 describes acts of law enforcement and contains no act in furtherance of the illegal purpose. Act 8, apart from being a possible misstatement of facts,[3] describes Medina making statements to detectives. A statement to police officers is not an act in furtherance of an illegal purpose. As such, a clear majority of the purported "overt acts," acts 1, 2, 4, 7, and 8 should never have been included in the jury instruction. The problem with the jury instruction does not end here.

Act 6 is incomplete and cryptic. It states in its entirety: "MEDINA, aka Jeffrey, was a passenger in the vehicle." It is difficult to ascribe any meaning to it, unless it is read in conjunction with act 5. This undermines the instruction's directive that only one act will suffice in order to convict Medina of conspiracy. If an act must be read in conjunction with another alleged overt act to give it meaning, it is incomplete.

Act 9 is likewise tenuous. It states Valadez "was searched and approximately 127 grams of Heroin [sic] were discovered on her person." Although it might be inferred from this language that Valadez possessed the heroin in furtherance of the illegal purpose, Medina correctly points out that act 9 describes an act by law enforcement which cannot be done in furtherance of the illegal purpose. At a minimum, act 9 is poorly worded. The instruction is inartful and opens the door to confusion by allowing the jury to conclude a search by law enforcement constituted an overt act.

Act 3 is also not the model of clarity. It states: "JOYCE's phone contained a text message from JOYCE to [Valadez] indicating JOYCE had wired $3,000 to [Valadez] on or about April 2, 2016." Confusion arises because it is not clear what overt act is alleged. Is it the sending of the text or the wiring of the $3,000? At a minimum, act 3 is unclear.

---

[3] Act 8 claims that Medina told detectives he was in Pocatello to collect money from Joyce and that he and Valadez would bring heroin to Pocatello. Although Medina may have admitted to being in Pocatello to pick up money from Joyce, the transcript shows that Medina denied the existence of drugs when speaking to the police.

Finally, that leaves act 5, which alleges, "[o]n or about April 14, 2016, [Valadez] drove a vehicle to 4170 Hawthorne in Chubbuck, Idaho and parked." Even assuming acts 3 and 5 contain sufficient allegations of overt acts, they are buried within multiple improper acts that may very well have misled the jury or been relied on by the jury to establish the required overt act element.

Jury instructions, when considered as a whole, are meant to fairly and adequately present the issues and state the applicable law. *See Dunlap*, 155 Idaho at 364, 313 P.3d at 20. Even viewing the instruction in this context, we are unpersuaded that Instruction No. 17, as a whole, either correctly stated the law or fairly presented the overt acts that would provide adequate support for Medina's conspiracy conviction. At best, Instruction No. 17 grossly misstated the law, and, at worst, it invited the jury to convict Medina of conspiracy by relying on multiple legally insufficient and inappropriate overt acts.

An erroneous jury instruction violates due process if it omits a contested element of a crime or if it relieves the State of the burden of proving every element of the crime beyond a reasonable doubt. *State v. Draper*, 151 Idaho 576, 588, 261 P.3d 853, 865 (2011). "[T]he State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Id.* (quoting *State v. Anderson*, 144 Idaho 743, 749, 170 P.3d 886, 892 (2007)).

Including multiple legally insufficient overt acts in the way that occurred here allowed the jury to establish guilt based on acts lacking the requisite components—that the overt act was committed by one of the coconspirators and that the overt act was done in furtherance of the illegal purpose. As a result, Instruction No. 17 "relieved the State of its burden of proving every element of the offense" and amounted to constitutional error; thus, the first prong of the fundamental error test has been satisfied. *See id.* at 590, 261 P.3d at 867 (finding "[t]he failure to clearly require the jury to find that an overt act was committed for the purpose of advancing the conspiracy relieved the state of its burden").

The second prong of the fundamental error test requires the error to be clear and obvious from the record and that the record discloses that the failure to object was clearly not a strategic or tactical decision. *Perry*, 150 Idaho at 226, 245 P.3d at 978. The language of the instruction

demonstrates the clear error. Regarding the latter requirement of the second prong,[4] the nature of the error, as determined from the record, demonstrates that the failure to object to the instruction could not have been a strategic decision. As discussed, the erroneous instruction allowed a jury to convict Medina without finding the required elements of an overt act of a coconspirator. There is no conceivable strategy in which failing to object to this instruction might have aided Medina's defense when the instruction, in effect, made it vastly easier for the jury to find Medina guilty of conspiracy. Accordingly, the second prong of the fundamental error test has been satisfied.

Medina's final burden under the fundamental error test requires him to show the error was not harmless. *Perry*, 150 Idaho at 226, 245 P.3d at 978. Accordingly, Medina must show "a reasonable possibility that the error 'affected the outcome of the trial court proceedings.'" *Bernal*, 164 Idaho at 193, 427 P.3d at 4 (quoting *Perry*, 150 Idaho at 226, 245 P.3d at 978).

This Court has articulated certain guidelines regarding how erroneous jury instructions pertain to the prejudice prong of the fundamental error test. First, "[a]n erroneous instruction will not constitute reversible error unless the instructions as a whole misled the jury or prejudiced a party." *State v. Mann*, 162 Idaho 36, 43, 394 P.3d 79, 86 (2017) (quoting *Draper*, 151 Idaho at 588, 261 P.3d at 865). "An erroneous instruction is prejudicial when it could have affected or did affect the outcome of the trial." *Garcia v. Windley*, 144 Idaho 539, 543, 164 P.3d 819, 823 (2007) (quoted in citation sentence with approval in *Draper*, 151 Idaho at 591, 261 P.3d at 868).

Given the manifest errors in Instruction No. 17, it was, as a whole, misleading to the jury. The jury here likely "read the instruction to omit the required element that an overt act occurred in the furtherance of the conspiracy[,]" as it cannot be said that the jury in fact relied on proper overt acts. *See Draper*, 151 Idaho at 591, 261 P.3d at 868. Consequently, there is a reasonable possibility that the jury relied on the erroneous overt acts. *Perry*, 150 Idaho at 226, 245 P.3d at 978. The error thus affected the outcome of Medina's conspiracy charge by making a guilty verdict much more easily reached. Initially, the third prong of the fundamental error test has been

---

[4] This Court has recently addressed the second and third prongs of the fundamental error test in *State v. Miller*, 165 Idaho 115, 443 P.3d 129 (2019), *reh'g denied* (June 12, 2019). However, *Miller* was issued after the parties in this case argued on appeal. Thus, they did not have the opportunity to conform their arguments to *Miller*'s articulation of the standard. As such, this opinion will apply the fundamental error test as established before *Miller*.

demonstrated as the instruction was harmful; however, this Court has noted certain circumstances where an erroneous instruction will not be found harmful. These circumstances are not applicable here.

First, "[w]here the jury instructions, taken as a whole, correctly state the law and are not inconsistent, . . . it will be assumed that the jury gave due consideration to the whole charge contained in all the instructions and was not mislead by any isolated portion thereof." *Draper*, 151 Idaho at 590, 261 P.3d at 867 (alteration in original) (quoting *State v. Enno,* 119 Idaho 392, 405, 807 P.2d 610, 623 (1991)). Although only the overt act element has been found erroneous, it is not an "isolated portion" of the instruction. A positive overt act was required in order for Medina to be found guilty of conspiracy. Instruction No. 17 was so pervasively incorrect, it can only be understood to have misled the jury. Moreover, the State points to no other instruction that may have remedied the error or correctly instructed the jury on overt acts. *See id.* at 591, 261 P.3d at 868.

Finally, we have previously held that a partially erroneous instruction omitting an element of a crime may be found harmless if "the evidence supporting a finding on the omitted element is overwhelming and uncontroverted, so that no rational jury could have found that the state failed to prove that element . . . ." *Id.* (quoting *Perry*, 150 Idaho at 224, 245 P.3d at 976). This case is distinguishable from that circumstance because, here, an element was not merely omitted; it was substituted by the inclusion of inaccurate overt acts which drastically reduced the State's burden and paved the way to an unconstitutional conviction. As a result, the error cannot be said to be harmless and is therefore fundamental, necessitating reversal of Medina's conspiracy conviction.

Because we are vacating the judgment of conviction on the conspiracy charge based on the erroneous jury instruction, it is unnecessary to address Medina's assertion that there was not substantial and competent evidence to support a jury's finding of an agreement among coconspirators.

## IV. CONCLUSION

Medina's conviction for conspiracy to violate the Uniform Controlled Substances Act is vacated. Medina's conviction for trafficking heroin is affirmed. The case is remanded to the district court for proceedings consistent with this opinion.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER CONCUR.