## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 52260

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, November 2024 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: February 21, 2025** |
| | ) | |
| **JOSINA MARIE REGAN,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Appellant.** | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Nancy Baskin, District Judge.

The district court's judgment of conviction for conspiracy to commit possession of methamphetamine, conspiracy to commit grand theft, and conspiracy to commit possession of "bath salts" is <u>vacated</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant Josina Marie Regan. Sally J. Cooley submitted argument on the briefs.

Raúl R. Labrador Idaho Attorney General, Boise, for Respondent State of Idaho. Kenneth K. Jorgensen submitted argument on the briefs.

_____

MEYER, Justice.

Josina Marie Regan appeals her judgment of conviction for three counts of conspiracy, asserting that the district court committed fundamental error by erroneously instructing the jury. Because we agree that the district court improperly instructed the jury regarding an essential element of each of the conspiracy charges, we vacate Regan's conspiracy convictions.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of October 22, 2020, Regan shot and killed her boyfriend, John Baker, in his residence in Boise. Shortly thereafter, she called Todd Potter and requested he meet her at Baker's residence. Potter contacted Robert "Bobby" Glenn seeking a ride to Baker's residence. Glenn drove Potter to the residence. At Regan's direction, Potter and Glenn moved various bags and loose clothing from the residence into Glenn's vehicle and Regan's vehicle.

1

Regan, Potter, and Glenn traveled to a motel where Regan rented two rooms. They placed the bags in one room and Potter stayed in the other room. Regan returned to the residence, called police, and reported that she found Baker unconscious with a gunshot wound. Regan was taken to the police station where she eventually admitted to shooting Baker. Later that same day, law enforcement searched the two motel rooms and discovered $1,275 in cash, 8.89 grams of methamphetamine, 0.18 grams of bath salts, and drug paraphernalia. Regan admitted to removing these items from the residence. The State charged Regan with numerous counts including first degree murder, preparing false evidence, possession of methamphetamine, grand theft, possession of bath salts, witness intimidation, and possession of drug paraphernalia. These charges are not at issue in this appeal. The State also charged Regan with conspiracy to commit possession of a controlled substance—methamphetamine, pursuant to Idaho Code sections 37-2732(c)(1) and 18-1701; conspiracy to commit grand theft, pursuant to Idaho Code sections 18-2403(1), 18-2407(1)(b), and 18-1701; and conspiracy to commit possession of a controlled substance—alpha-pyrrolidinohexanophenone (a-PHP) (commonly known as "bath salts"), pursuant to Idaho Code sections 37-2732(c)(3), 37-2705(f)(6), and 18-1701. The jury instructions regarding these charges are at issue in this appeal.

The district court provided the jury with jury instruction no. 36 (regarding conspiracy to commit possession of methamphetamine), jury instruction no. 43 (regarding conspiracy to commit grand theft), and jury instruction no. 49 (regarding conspiracy to commit possession of bath salts).

These instructions were substantially identical[1] and provided:

> In order for the defendant to be guilty of [Count IV, Conspiracy to Commit Possession of a Controlled Substance] [Count VI, Conspiracy to Commit Grand Theft] [Count IX, Conspiracy to Commit Possession of a Controlled Substance], the state must prove each of the following:
>
> 1. On or about October 22, 2020
>
> 2. in the state of Idaho
>
> 3. the defendant Josina Regan, AKA Josina Marie Regan, AKA Josina M. Brooks, AKA Josina Regan Adams and/or Todd Potter and/or other unnamed or unknown persons agreed
>
> 4. to commit the crime of [Possession of a Controlled Substance] [Grand Theft];

---

[1] The language of the three instructions is identical except for language related to the criminal act to be accomplished; this varied language is reflected in the included brackets.

5. the defendant intended that the crime would be committed;

6. one of the parties to the agreement performed at least one of the following acts:

    a. On or about October 22, 2020, Josina Regan and/or Todd Potter removed [methamphetamine] [cash] [pyrrolidinohexanophenone (a-PHP), commonly known as "bath salts,"] from John Baker's residence.

    b. On or about October 22, 2020, Josina Regan and/or Todd Potter transported [methamphetamine] [cash] [pyrrolidinohexanophenone (a-PHP), commonly known as "bath salts,"] to a Motel 6 in Meridian, Idaho.

    c. On or about October 22, 2020, Todd Potter watched over the [methamphetamine] [cash] [pyrrolidinohexanophenone (a-PHP), commonly known as "bath salts,"] at the Motel 6 in Meridian, Idaho.

7. and such act was done for the purpose of carrying out the agreement.

If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.

Each instruction modified paragraph 3 the standard instruction found in Idaho Criminal Jury Instruction (I.C.J.I.) 1101 by replacing the word "and" between the defendant's name and the names of the alleged coconspirators with the term "and/or." The district court explained that it was making the modification based on *State v. Yang*, 167 Idaho 944, 477 P.3d 998 (Ct. App. 2020).

The jury found Regan guilty of all charges except the witness intimidation charge. Regan timely appealed asserting that the district court committed fundamental error in instructing the jury regarding the conspiracy charges and abused its discretion in admitting certain evidence. Regan's appeal was assigned to the Court of Appeals, which affirmed the district court, holding that (1) the district court's conspiracy instructions were not erroneous and (2) the challenged evidence was properly admitted. Regan timely filed a petition for review, which was granted as to her challenge to the conspiracy instructions.[2]

## II. STANDARDS OF REVIEW

"When addressing a petition for review, this Court will give 'serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court.'" *Rodriquez v.*

---

[2] In her petition for review, Regan expressly withdrew the evidence issue stating that she "no longer pursues it on appeal." Given this concession, we will not address the evidentiary issue.

3

*State*, 171 Idaho 634, 641, 524 P.3d 913, 920 (2023) (quoting *Marr v. State*, 163 Idaho 33, 36, 408 P.3d 31, 34 (2017)).

When an "alleged error was not followed by a contemporaneous objection, it shall only be reviewed by an appellate court under Idaho's fundamental error doctrine." *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010). The fundamental error doctrine involves a three-prong inquiry to determine whether the alleged error: "(1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists . . . ; and (3) was not harmless." *Id.* The defendant bears the burden of persuasion on each of these prongs. *Id.*

### III.    ANALYSIS

On appeal, Regan argues that the district court's instructions regarding the conspiracy charges constituted fundamental error because they misstated the agreement element in a manner thereby unconstitutionally relieving the State of its burden to prove that Regan was a party to the agreement beyond a reasonable doubt. Regan further argues that this error was clear from the record and was not harmless. The State responds that the instructions were not in error because, when read as a whole, the instructions properly informed the jury as to each essential element of the conspiracy charges. Alternatively, the State argues that any error was not clear from the record or was harmless. We agree that the deficiencies in the district court's conspiracy instructions constitute fundamental error.

**A. The district court's conspiracy instructions relieved the State of its burden to prove that Regan was a party to the agreement beyond a reasonable doubt and violated Regan's right to due process.**

When the alleged error involves a jury instruction, the first prong of the fundamental error analysis involves an inquiry into "whether the jury instruction was erroneous at all." *State v. Medina*, 165 Idaho 501, 507, 447 P.3d 949, 955 (2019) (citing *State v. Skunkcap*, 157 Idaho 221, 227, 335 P.3d 561, 567 (2014); *State v. Carver*, 155 Idaho 489, 493, 314 P.3d 171, 175 (2013)). Instructions are reviewed "*de novo* to determine whether, when considered as a whole, they fairly and adequately present the issues and state the applicable law." *Id.* (internal quotation marks and citation omitted). "Whether the instruction was erroneous will depend upon how a reasonable juror would have interpreted the instruction." *Id.* (quoting *Skunkcap*, 157 Idaho at 227–28, 335 P.3d at 567–68).

"An erroneous jury instruction violates due process if it relieves the State of the burden of proving every element of the crime beyond a reasonable doubt." *State v. Bodenbach*, 165 Idaho

4

577, 587, 448 P.3d 1005, 1015 (2019); *see also Medina*, 165 Idaho at 509, 447 P.3d at 957. An essential element of the crime of conspiracy is that the defendant was a party to an agreement to commit the underlying criminal act. *See State v. Smith*, 161 Idaho 782, 787, 391 P.3d 1252, 1257 (2017).

Regan argues that the inclusion of the additional "and/or"—as opposed to merely "and"—between her name and the names of the alleged coconspirators in paragraph 3 of the conspiracy instructions allowed the jury to find her guilty of conspiracy without finding that she was a party to the agreement. In response, the State agrees that the challenged instructions were likely grammatically incorrect but argues that other portions of the jury instructions were sufficient to resolve any confusion the challenged language might have created. We agree with Regan that the challenged language in the instructions was an incorrect statement of the law, which was not corrected by any other portion of the jury instructions.

The inclusion of the term "and/or" between Regan's name and the name of the alleged coconspirators differs from the instruction provided by the Idaho Criminal Jury Instruction 1101 and the instruction given in *State v. Yang,* 167 Idaho 944, 947, 477 P.3d 998, 1001 (Ct. App. 2020). This variance allowed the jury to find that the agreement element had been established if any one of four potential combinations of parties agreed to commit the underlying crimes: (1) Regan and Potter; (2) Regan and other individuals; (3) Regan, Potter, and other individuals; or (4) *Potter and other individuals*. Since one of these potential combinations did not include Regan, the instructions did not inform the jury that Regan was an essential party to the agreement. Consequently, the instruction misstated the law and relieved the State of its burden to prove that Regan was a party to the agreement beyond a reasonable doubt.

No other portion of the jury instructions referenced by the State remedied this error. For example, while paragraph 5 of the conspiracy instructions provides that "the defendant intended that the crime would be committed," this language only requires the jury to find that Regan intended the underlying criminal act to occur, not that she was a party to an agreement to accomplish the act. Likewise, jury instruction numbers 38, 45, and 50, which provided that "[t]he state alleges the defendant was a party to an agreement to commit the crime" are merely allegations that do not define any element of the crime. Finally, the State's argument that a reasonable juror would not "interpret the instruction as requiring Regan to be convicted for a crime that she did not commit" is unavailing. The challenged instructions define the crime of conspiracy, and the jury

was instructed in jury instruction no. 4 to apply the instructions "regardless of your own opinion of what the law is or should be, or what either side may state the law to be."

Since the challenged instructions relieved the State of proving an essential element of the crimes beyond a reasonable doubt, they violated Regan's unwaived constitutional right to due process.

**B. The error was clear and obvious from the record.**

The second prong of the fundamental error analysis requires the "error to be clear and obvious" from the record "including information as to whether the failure to object was a tactical decision." *Medina*, 165 Idaho at 505, 509, 447 P.3d at 953, 957 (citation omitted); *see also State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). "If the record does not contain evidence regarding whether trial counsel's decision was strategic, the claim is factual in nature and thus more appropriately addressed via a petition for post-conviction relief." *Miller*, 165 Idaho at 119, 443 P.3d at 133. "Appellate counsel's opinion that the decision could not have been tactical" is insufficient to satisfy this prong of the fundamental error analysis. *Id.*

Regan argues that the errors in the jury instructions are clear because they can be seen solely by reviewing the instructions. We agree. The errors in the instructions are demonstrated by review of the jury instructions alone "without the need for any additional information not contained in the appellate record" and are therefore clear from the record. *Id.* (citation omitted).

Quoting *Medina*, 165 Idaho at 509, 447 P.3d at 957, Regan argues "[t]here is no 'conceivable strategy' for trial counsel to fail to object to instructions that 'made it vastly easier' for the jury to find [her] guilty of conspiracy." Regan notes that trial counsel referenced Potter's testimony as demonstrating a lack of agreement and argued that the State had not carried its burden of proof as to the agreement element. The State contends that pursuant to *Miller*, appellate counsel's opinion regarding whether the failure to object was tactical is insufficient to establish the second prong of the fundamental error analysis. The State further argues that trial counsel's statements during closing arguments do not demonstrate that the failure to object to the conspiracy instructions was not tactical.

The State is correct that a mere expression of appellate counsel's opinion of trial counsel's strategy is insufficient to establish the second prong of the fundamental error analysis. *Miller*, 165 Idaho at 119, 443 P.3d at 133. However, Regan offers more than bare expression of opinion. Her appellate counsel also notes that trial counsel's strategy regarding the conspiracy charges, as

6

demonstrated by his statements during closing arguments, included challenging whether the State had met its burden of establishing that she was a party to the agreement. Where trial counsel argues that the State failed to carry its burden regarding a specific element of the charges, we agree that there is "no conceivable strategy" not to object to jury instructions which relieve the State of its burden on that element.

## C. The error was not harmless.

The third prong of the fundamental error analysis requires the defendant to "demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings." *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010). In *Miller*, we clarified that a defendant must do more than identify a "reasonable possibility" that the error impacted the outcome of the trial; rather the defendant must "demonstrate that the clear error in the record—*i.e.*, the error identified in the first and second prongs—actually affected the outcome of the trial proceedings." 165 Idaho at 119–20, 443 P.3d at 133–34.

Regan relies on *Medina*, 165 Idaho at 510, 447 P.3d at 958, for the proposition that the erroneous instructions were not harmless because they affected the outcome of her conspiracy charge by making a guilty verdict much more easily reached. The State responds that Regan's reliance on *Medina* is improper since *Medina* applied a pre-*Miller* standard and only required the defendant to demonstrate a "reasonable possibility" that the error affected the trial proceedings. The State further argues, relying on *Bodenbach*, 165 Idaho at 585–88, 448 P.3d at 1013–16, that the erroneous inclusion of a single word was unlikely to mislead the jury since (1) any error was to an "isolated portion" of the instructions and was cured by other portions of the instructions and (2) there was overwhelming evidence that Regan was "not only . . . a party to each conspiracy," but she also "initiated and directed them to their successful culmination in the completed crimes." A review of cases cited by the parties supports Regan's interpretation of our precedent.

In *Perry*, this Court recognized the need to clarify the standards Idaho appellate courts apply when considering claims under Idaho's fundamental error doctrine. 150 Idaho at 219, 245 P.3d at 971. To "establish a clear standard going forward" the Court engaged in an extensive "examination of the past, summarizing the origins of the harmless error doctrine, the subsequent development of the standard of review employed for errors impinging upon constitutionally protected rights, and finally, federal plain error and its relationship with Idaho's doctrine of fundamental error." *Id.* at 220–28, 245 P.3d at 972–80.

7

This analysis included reviewing relevant precedent regarding how harmless error review was applied to specific trial errors. *Id.* Regarding unobjected-to instructional error, the Court concluded that erroneous jury instructions, which "affected the entire deliberative process," were not subject to harmless error review, but less pervasive instructional error—including the omission of an essential element of the crime—could be reviewed for harmless error. *Id.* at 223–24, 245 P.3d at 975–76 (first citing *Sullivan v. Louisiana*, 508 U.S. 275, 279–81 (1993) (erroneous reasonable doubt instruction was not subject to harmless error analysis since it constituted a structural defect which "vitiates all the jury's factual findings"); and then citing *Neder v. United States*, 527 U.S. 1, 17–19 (1999) (instruction which omitted an essential element of the crime subject to harmless error review). However, errors in an elements instruction would not be found "harmless beyond a reasonable doubt" where the "element in question had been contested, and competing evidence sufficient to support a contrary finding on the omitted element had been offered." *Id.* at 224, 245 P.3d at 976 (citing *Neder*, 527 U.S. at 19). Thus, this Court held that "where the evidence supporting a finding on the omitted element is overwhelming and uncontroverted, so that no rational jury could have found that the state failed to prove that element, the constitutional violation may be deemed harmless." *Id.*

This Court's review of historical precedent ultimately resulted in the announcement of the now familiar three prong formulation of the fundamental error doctrine. *Id.* at 226, 245 P.3d at 978. The Court held that the third prong, regarding harmless error, required a defendant to "demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings." *Id.* The Court also included an alternative formulation of this standard, which provided that a "defendant bear[s] the burden of proving there is a reasonable possibility that the error affected the outcome of the trial." *Id.*

Eleven years later, in *Miller*, 165 Idaho 115, 443 P.3d 129, we were once again called on to clarify the harmless error prong of the fundamental error doctrine. In *Miller*, the defendant challenged various instances of alleged unobjected-to prosecutorial misconduct and language in an unobjected-to jury instruction. 165 Idaho at 118, 443 P.3d at 132. Prior to addressing these arguments, the Court recognized that since *Perry* was released, "both the 'error affected the outcome' and the 'reasonable possibility' language" had been cited when discussing the harmless error prong of the fundamental error analysis. *Id.* at 133, 443 P.3d at 119. Finding that the "reasonable possibility" language had "resulted in confusion among litigants," we expressly

disavowed this language and held "that the third prong of *Perry* requires that the defendant demonstrate that the clear error in the record—*i.e.*, the error identified in the first and second prongs—*actually affected* the outcome of the trial proceedings." *Id.* at 133–34, 443 P.3d at 119–20 (emphasis added). However, in announcing this clarification, we did not address or abrogate *Perry*'s specific discussion of how harmless error review is applied to erroneous jury instructions that omit a required element of the charge.

Shortly after *Miller* was issued, we considered whether an unobjected-to jury instruction for a conspiracy charge constituted fundamental error in *Medina*, 165 Idaho 501, 447 P.3d 949. The State charged the defendant with "conspiracy to violate the Uniform Controlled Substances Act." *Id.* at 504, 447 P.3d at 953. The challenged jury instruction required the jury to find that at least one of nine purported overt acts had been committed in order to convict the defendant of the conspiracy charge. *Id.* at 507–08, 447 P.3d at 955–56. We concluded that seven of these purported overt acts were legally insufficient to support a conspiracy conviction. *Id.* at 508, 447 P.3d at 956. "Given the manifest errors in [the jury instruction]," we held that "it was, as a whole, misleading to the jury." *Id.* at 509, 447 P.3d at 957. Since "it cannot be said that the jury in fact relied on proper overt acts" to convict the defendant, we held that "there [was] a reasonable possibility that the jury relied on the erroneous overt acts" and that "[t]he error thus affected the outcome of Medina's conspiracy charge by making a guilty verdict much more easily reached." *Id.* at 509–10, 447 P.3d at 957–58. In reaching this outcome, we declined to apply the newly announced clarification from *Miller* because the parties had completed oral arguments prior to the issuance of the *Miller* opinion. *Id.* at 509 n.4, 447 P.3d at 957 n.4.

We additionally noted two circumstances where an erroneous jury instruction would not be found harmful. The first circumstance is where the error occurred only in an "isolated portion" of the jury instructions which, when taken as a whole, otherwise "correctly state the law." *Id.* at 510, 447 P.3d at 958 (quoting *State v. Draper*, 151 Idaho 576, 590, 261 P.3d 853, 867 (2011)). The second circumstance occurs where the instruction omits an element of the crime but "the evidence supporting a finding on the omitted element is overwhelming and uncontroverted, so that no rational jury could have found that the state failed to prove that element . . . ." *Id.* (alteration in original) (quoting *Draper*, 151 Idaho at 591, 261 P.3d at 868 (quoting *Perry*, 150 Idaho at 224, 245 P.3d at 976)). We concluded that neither exception applied. *Id.* As to the first, this Court held that "[a]lthough only the overt act element has been found erroneous, it is not an 'isolated portion' of

9

the instruction" because it misled the jury as to what constituted the required positive overt act and the State had failed to identify any "other instruction that may have remedied the error or correctly instructed the jury on overt acts." *Id.* As to the second circumstance, this Court found that "an element was not merely omitted; it was substituted by the inclusion of inaccurate overt acts which drastically reduced the State's burden and paved the way to an unconstitutional conviction." *Id.*

Only a week after *Medina* was released, we released our decision in *State v. Bodenbach*, 165 Idaho 577, 448 P.3d 1005 (2019), where we were again asked to apply the fundamental error doctrine to unobjected-to language in a jury instruction. Bodenbach was charged with first-degree murder after shooting and killing his neighbor during an argument. *Id.* at 581–83, 448 P.3d at 1009–10. Bodenbach challenged an initial aggressor instruction which provided, *inter alia*, that "[t]o have the benefit of self-defense or the defense of another, the circumstances justifying a killing must be such as to render it unavoidable" and continued to instruct the jury on limitations to Bodenbach's ability to claim self-defense if he was the initial aggressor in the conflict. *Id.* at 585, 448 P.3d at 1013. We held that Bodenbach had established the first prong of the fundamental error analysis since the quoted sentence was an improper statement of the law and "reduced the State's burden of proving the 'unlawful' element for a murder conviction." *Id.* at 587, 448 P.3d at 1015. We further held that Bodenbach had established the second prong since, while he had not objected to the specific language of the instruction, he had objected to giving the instruction at all. *Id.* However, we held that the error did not rise to the level of fundamental error because Bodenbach had not satisfied the third prong of *Perry* since "it is unlikely that the single sentence in the jury instruction actually affected the outcome of the trial proceeding" as other instructions "clearly outlined the law that the jury was required to apply." *Id.* at 587–88, 448 P.3d at 1015–16.

Based on our review of these cases, we are satisfied that *Perry*'s interpretation of *Neder* and *Sullivan* can be read in harmony with *Miller*; *i.e.*, that *Miller*'s requirement that a defendant demonstrate that the error "*actually affected* the outcome of the trial proceedings" is met when a defendant demonstrates that (1) the challenged instruction omitted an essential element of the crime or otherwise relieved the State of its burden to prove the element beyond a reasonable doubt; (2) the omitted element was contested, and (3) competing evidence sufficient to support a contrary finding on the omitted element was offered. *See Perry*, 150 Idaho at 224, 245 P.3d at 976. To hold otherwise would require a defendant to demonstrate the precise grounds upon which the jury reached its verdict. Given the inherent secrecy of jury deliberations, such a requirement would

10

place an insurmountable burden on a defendant, thus precluding an appellate court from ever finding that a jury instruction omitting a required element of the offense is harmful. Moreover, as *Neder* and *Sullivan* are decisions from the United States Supreme Court interpreting the federal right to due process, we are bound to apply it when a defendant invokes the same constitutional right.

In addition, while *Medina* applied the "reasonable possibility" language disavowed in *Miller*, we note that its analysis otherwise properly considered the harmless error analysis applicable to a jury instruction that omits a required element of the offense. Thus, considering the similarities in the instruction challenged in *Medina* and the instruction challenged by Regan—each instruction provided both permissible and impermissible grounds on which the jury could find that the element had been established—we conclude that Regan's reliance on *Medina* is both proper and persuasive. Finally, we conclude that *Bodenbach*, as relied on by the State, is distinguishable. In *Bodenbach*, the harm from the erroneous statement of law in the challenged instruction was cured by correct statements of the law in other instructions. *Bodenbach*, 165 Idaho at 587–88, 448 P.3d at 1015–16. Here, as discussed above, no other portions of the jury instructions properly instructed the jury on the essential agreement element.

Applying the standards expressed above, we hold that Regan has demonstrated that the erroneous instructions here were not harmless. The challenged instructions misstate the essential agreement element, effectively omitting or otherwise relieving the State of its burden to prove the element beyond a reasonable doubt, and the omitted element was contested by Regan. Consequently, the erroneous jury instructions are not harmless unless evidence regarding the essential agreement element was so "overwhelming . . . that no rational jury could have found that the state failed to prove that element." *Perry*, 150 Idaho at 224, 245 P.3d at 976. A review of the record does not demonstrate such overwhelming evidence.

Both Potter and Glenn testified that they removed bags from Baker's residence at Regan's instruction. However, both also testified that they were unaware of the contents of those bags when they moved them. While Glenn testified that Potter had told him there were drugs and cash at the Baker residence, he did not testify that this information came from Regan. Regan testified that she never informed either Potter or Glenn of the contents of the bags. Based on this testimony, a reasonable jury could have found that Regan intended to commit the underlying criminal acts herself—without agreeing with either Potter or Glenn—and that Potter and Glenn initially agreed

11

to commit the underlying criminal acts but without knowledge that Regan also intended to commit the same acts or that the removal of bags from Baker's residence accomplished those acts. Thus, the jury could have found that only Potter and Glenn were parties to an *agreement* to commit the underlying criminal offenses but, nevertheless, concluded that the element was satisfied based on the erroneous instructions provided. Since the evidence regarding the agreement element was not so overwhelming that no rational jury could have found that the State failed to prove that element beyond a reasonable doubt on legally proper grounds, the erroneous instructions are not harmless and require that Regan's conspiracy convictions be vacated.

## IV. CONCLUSION

Regan's convictions for Count IV (conspiracy to commit possession of methamphetamine), Count VI (conspiracy to commit grand theft), and Count IX (conspiracy to commit possession of "bath salts") are vacated.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.

12