# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47037

STATE OF IDAHO,

   Plaintiff-Respondent,

v.

CARLI JOANN CAMPBELL,

   Defendant-Appellant.

)
)
)
)
)
)
)
)
)

Boise, December 2020 Term

Opinion filed: February 10, 2021

Melanie Gagnepain, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County.  Lansing L. Haynes, Senior District Judge.

The judgment of the district court is <u>affirmed</u>.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Appellant. Ben McGreevy argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent.  Justin Porter argued.

_____

MOELLER, Justice

This case asks us to determine whether the district court properly instructed the jury on the elements of accessory to a felony. The State charged Carli Campbell as an accessory to a felony under Idaho Code section 18-205(1) for withholding or concealing information from police officers about an aggravated battery and burglary that occurred in her home on December 24, 2017. After the evidentiary phase of the trial was completed, Campbell requested that the district court instruct the jury that the State was required to prove that the alleged assailant, Michael Cross, committed the aggravated battery or burglary beyond a reasonable doubt. The State opposed this request and the district court agreed, concluding that while the State was required to prove Campbell had knowledge of the conduct that constituted an aggravated battery or a burglary, it was not was required to prove Cross committed the aggravated battery or burglary beyond a reasonable doubt. At the conclusion of the trial, the jury found Campbell guilty. Campbell now appeals her conviction to this Court. We affirm.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

Daniel Renaud and Carli Campbell have known each other for about fifteen years. Sometime after Campbell's husband was incarcerated, their relationship had become romantic.[1] On December 23, 2017, Campbell and her female friend met Renaud at a bowling alley around 10:00 p.m. About an hour later, Renaud, Campbell, and her friend took an Uber back to Campbell's house, near Hayden, Idaho. Renaud left his vehicle at the bowling alley because he had been drinking. Once back at Campbell's house, the three of them played cards and drank alcohol. Later, after Campbell and Renaud had engaged in sexual intercourse in her bedroom, Campbell became angry when she saw Renaud cuddling on the couch with her friend. Renaud suggested that he, Campbell, and her friend engage in a "threesome." Campbell was incensed and demanded that Renaud leave. He refused, claiming he was too drunk, it was 2:30 a.m., and his vehicle was parked at the bowling alley. Campbell went outside with her phone for about five minutes, and then returned and told Renaud that he would get his "ass kicked" if he did not leave. Campbell told him, "If I was [sic] you, I would leave." Renaud said he would be staying, and then closed his eyes and fell asleep on the couch.

Shortly thereafter, Renaud opened his eyes and saw Matthew Cross coming through the front door and rushing at him. He recognized Cross because Renaud had met him on two prior occasions. He testified that Cross pointed at Renaud and then "bull rushed" him. Cross punched and kicked Renaud, until he became unconscious.

Campbell called 911 and requested an ambulance. She told the operator, "there was like a dispute over a girl and someone got punched." Kootenai County Sheriff's Deputy Brock responded to a report of an unconscious male at Campbell's house around 3:13 a.m. on December 24, 2017. When Deputy Brock arrived, Campbell met him and directed him to the kitchen, where he observed a male, later identified as Renaud, propped up by Campbell's friend. Renaud was lethargic, mumbling, his eyes were rolling around, and he had blood on his face. Deputy Brock attempted to question Renaud but Renaud was largely incoherent.

Campbell told Deputy Brock that an unknown individual entered her home without permission, beat Renaud until he was unconscious, and then left. She stated that she had not seen anything or anybody because she was in another room sleeping when it happened. Later, Deputy

---

[1] Carli Campbell is married to Cody Campbell, who was incarcerated at the Kootenai County Jail during the time relevant to this case.

Brock overheard Campbell tell medical personnel that Renaud had been kicked and punched. Because Campbell had told Deputy Brock that she did not see anything, Deputy Brock questioned her again. Campbell then told Deputy Brock, "I didn't see what happened. I just know that I saw the kick." Campbell also told another officer she saw "a person" but she could not describe their race or gender. Yet, a short time later, Campbell told a different officer that "*he*" had walked in and punched and kicked Renaud and then walked out—specifically using male pronouns in her statement. Officers expressed skepticism about Campbell's story and concern over her apparent indifference to the crime, explaining that she would be charged if they found out she was lying, Yet, Campbell continuously denied *any* knowledge of the incident, insisting that an unknown person randomly came into her house and knocked out Renaud, even though she initially told the 911 operator that "there was like a dispute over a girl."

Upon regaining full consciousness at the hospital, Renaud identified Cross as his attacker to police officers. Doctors determined that Renaud had a broken jaw and a fractured sinus that required surgery. Afterwards, doctors wired his jaw shut for five weeks. Renaud's recovery was difficult – he lost twenty pounds because he could not eat solid food, he endured serious pain, he could not work, and he could barely communicate. The metal plates used to hold his jaw in place became infected, so Renaud had to undergo a second surgery to remove and replace those. The shape of Renaud's jaw has been permanently altered as a result of the incident.

Deputy Brock and other deputies were unsuccessful in their attempts to arrest Cross until about two weeks after the incident. Deputy Brock confiscated two cell phones from Cross. Law enforcement then obtained search warrants for Cross' two cell phones and Campbell's cell phone and extracted data from all three cell phones. Detective Kelso also obtained a search warrant for records from Cross' cell phone provider. Data from these records showed when the phone had been used and which cell phone towers it was near during use, thereby giving a rough physical location of where the caller was when the calls were placed and the text messages sent. Detective Kelso examined the content of text messages between Cross and Campbell from the days surrounding the incident and opined that they were also engaged in a sexual relationship.

On the night of the incident, the cell phone records showed that Campbell called Cross at 2:39 a.m. and the call lasted two minutes and forty seconds, and then Cross called Campbell back at 2:42 a.m. and that call lasted fifteen seconds. At 2:55 a.m. Cross texted Campbell, "Its [sic] ok carli i [sic] know im [sic] not worth it. Wish you the best." Campbell responded at 3:01

a.m., "Actually was looking forward to you fucking him up. You are a great man wish I could have seen that." Cross replied at 3:01 a.m., "Lmfao I bet," "Cop callin [sic] for sure," and "Not setting me up." At 3:03 a.m. Campbell sent Cross a text, "He was so scared," and she sent another one at 3:04 a.m., "I am like upset that he's gonna [sic] keep his teeth."

Detective Uhrig analyzed the cell phone provider records to generate a map that showed what cell phone tower Cross' phone was operating near at the time of the incident. At 11:37 p.m., Cross' phone was operating in a sector on the north side of Coeur d'Alene. At 2:38 a.m. and between 2:55 a.m. and 3:06 a.m. the phone was operating in a sector on the north side of Hayden, near Campbell's house.

An analysis of Campbell's cell phone also revealed she conducted several internet searches immediately following the incident, including such topics as: (1) "can cops subpoena text messages"; (2) "How Can I Protect My Cell Phone Data Records From Law Enforcement Subpoenas[]"; (3) "Court Rules Police Don't Need A Warrant To Get Your Cellphone Records"; (4) "can cops read text messages"; (5) "How do you read deleted text messages"; and (6) "how long does it take cops to get phone records."

The State charged Campbell with accessory to a felony under Idaho Code section 18-205(1). The superseding indictment alleged:

> That the defendant, Carli Joann Campbell, on or about the 24th day of December, 2017, in Kootenai County, Idaho, having knowledge that a felony had been committed, to wit; aggravated battery and/or burglary, did willfully withhold or conceal it from a peace officer or officers, all of which is contrary to the form, force and effect of the statute in such case made and provided and against the peace and dignity of the People of the State of Idaho.

The case proceeded to trial and the State presented evidence and testimony consistent with the aforementioned facts. Campbell did not testify in her defense or present any evidence.

During the jury instruction conference, following the close of evidence, Campbell objected to the district's court's refusal to give her proposed jury instructions. Campbell's proposed instructions required the jury to find that the State proved Cross committed an aggravated battery or burglary beyond a reasonable doubt. Specifically, her proposed instructions read:

> In order for the defendant to be guilty of Accessory to a Felony, the state must prove each of the following elements of Aggravated Battery *as related to Matthew Cross*:
> 1. On or about December 24, 2017

4

2. in the state of Idaho
3. Matthew Cross committed a battery upon Daniel Renaud,
4. by wearing shoes and kicking Daniel Renaud, and
5. when doing so Matthew Cross caused great bodily harm, permanent disability or permanent disfigurement and/or used a deadly weapon or instrument

If any of the above has not been proven beyond a reasonable doubt, then you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, you must find the defendant guilty.
. . . .

In order for the defendant to be guilty of Accessory to a Felony, the state must prove each of the following elements of Burglary *as related to Matthew Cross*:
1. On or about December 24, 2017
2. in the state of Idaho
3. Matthew Cross entered a house located at [] North Maple in Hayden and
4. at the time entry was made, Matthew Cross had the specific intent to commit Aggravated Battery.

If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.

(Emphasis added).

Campbell supported her proposed instructions by arguing, "in this particular case, since it is an element of the offense that [Campbell] had knowledge that a felony occurred, that the State is indeed required to prove that the offense occurred beyond a reasonable doubt." Campbell further asserted, "Because if this was an issue where it only amounted to a level of a misdemeanor battery, then my client wouldn't have withheld or concealed information or knowledge regarding a felony, which this is specific to a felony offense."

The district court rejected Campbell's proposed instructions and reasoned:

the State must prove that the defendant in this case had knowledge of conduct that can be constituted [sic] aggravated battery or burglary, but not that she had knowledge that those crimes had been proved beyond a reasonable doubt or that those crimes have such evidence that they amount to beyond-a-reasonable-doubt standard.

Instead of imposing a burden on the State to prove Cross committed a collateral crime, the district court required the jury to find an aggravated battery and/or burglary had been committed beyond a reasonable doubt. The district court gave the following elements instruction:

5

In order for the defendant to be guilty of Accessory to a Felony, the State must prove each of the following:

1. On or about December 24, 2017
2. in the state of Idaho
3. the defendant Carli Joann Campbell while
4. having knowledge that an Aggravated Battery and/or Burglary had been committed
5. did willfully withhold or conceal knowledge of such Aggravated Battery and/or Burglary from a peace office or officers.

*If any of the above has not been proven beyond a reasonable doubt*, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.

(Emphasis added). The district court also defined the elements of Aggravated Battery and Burglary for the jury, using standard Idaho Criminal Jury Instructions (ICJI) 511, 1203, 1207.

The jury found Campbell guilty of accessory to a felony. The district court imposed a unified sentence of five years, with zero years fixed, and retained jurisdiction. Following a successful Rider, the district court suspended the sentence and placed Campbell on supervised probation for two years. Campbell timely filed a notice of appeal.

## II. STANDARD OF REVIEW

" 'Whether jury instructions fairly and adequately present the issues and state the applicable law is a question of law over which this Court exercises free review.' " *State v. Draper*, 151 Idaho 576, 587, 261 P.3d 853, 864 (2011) (quoting *State v. Humphreys*, 134 Idaho 657, 659, 8 P.3d 652, 654 (2000)). This Court looks to jury instructions as a whole, rather than individually, to determine whether they adequately present the issues and state the applicable law. *Id.* at 588, 261 P.3d at 865; *State v. Adamcik*, 152 Idaho 445, 472, 272 P.3d 417, 444 (2012). " 'An erroneous instruction will not constitute reversible error unless the instructions as a whole misled the jury or prejudiced a party.' " *State v. Mann*, 162 Idaho 36, 43, 394 P.3d 79, 86 (2017) (quoting *State v. Zichko*, 129 Idaho 259, 264, 923 P.2d 966, 971 (1996)). If there is an omission of an essential element in a jury instruction this Court employs the harmless error test. *State v. Hickman*, 146 Idaho 178, 180, 191 P.3d 1098, 1100 (2008).

## III. ANALYSIS

**A. The district court properly instructed the jury on the charge of accessory to a felony.**

Campbell contends the district court erred when it refused to give her proposed jury instruction, which required the jury to find the State proved Cross committed an aggravated

6

battery or burglary beyond a reasonable doubt. She essentially asserts that the jury had to find the principal, Cross, guilty of a felony before she could be found guilty as an accessory. Campbell argues that due process requires each and every element of a crime to be proven beyond a reasonable doubt.

> The Fourteenth Amendment of the United States Constitution guarantees the right to due process, and the U.S. Supreme Court has held that as a part of that due process, 'no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.'

*Adamcik*, 152 Idaho at 460, 272 P.3d at 432 (quoting *Jackson v. Virginia*, 443 U.S. 307, 316 (1979)).

First, we begin our analysis with Idaho Code section 18-205(1), which pertains to accessories to a felony crime. Statutory interpretation is intended to ascertain and " 'give effect to legislative intent.' " *Doe v. Boy Scouts of America*, 148 Idaho 427, 430, 224 P.3d 494, 497 (2009) (quoting *State v. Doe*, 147 Idaho 326, 328, 208 P.3d 730, 732 (2009)). This Court begins with the statute's literal words, "which are the best guide in determining legislative intent." *Id.*

> Idaho Code section 18-205(1) provides:
>
> All persons are accessories who, having knowledge that *a felony has been committed*:
>> (1) Willfully withhold or conceal it from a peace officer, judge, magistrate, grand jury or trial jury

(Emphasis added). A plain reading of this statute does not support Campbell's position. The plain words require that the person charged have knowledge that a felony has been *committed*. The reasonable interpretation of section 18-205(1) is that it places the burden on the State to prove that the accessory possessed the required mental state—knowledge of the felony—and it requires commission of a felony.

No Idaho appellate court has ever held that conviction of a principal of the crime, prior to or during the trial of the accessory, is a prerequisite to an accessory conviction. However, while considering whether accessory after the fact is a lesser included offense of aiding and abetting, this Court noted the essential statutory elements of accessory of a felony as:

> [T]he accessory after the fact statute requires that (1) the actor hav[e] knowledge that a felony has been committed; then, (2) with that knowledge . . . willfully withhold or conceal that knowledge from law enforcement. . . .

*Rome v. State*, 164 Idaho 407, 418, 431 P.3d 242, 253 (2018) (internal quotations omitted).

In *State v. Hauser*, the Idaho Court of Appeals addressed a challenge to the sufficiency of the evidence for a conviction as an accessory to a felony. *See State v. Hauser*, 143 Idaho 603, 150 P.3d 296 (Ct. App. 2006). The defendant conceded that the State presented sufficient evidence to prove the underlying offense – so that issue was never considered by the court. *Id.* at 607, 150 P.3d at 300. Instead, the defendant focused her appeal on the requirement that the State must prove she had actual knowledge that a felony had been committed. *Id.* Regarding that argument, the court held, "the knowledge requirement of I.C. § 18-205, in the context of subsection (1) of that statute, is met if the person charged as an accessory had such information as would lead a reasonable person to conclude that a felony had been committed." *Id.* The court in *State v. Teasley* also reached a similar result. *See Teasley*, 138 Idaho 113, 58 P.3d 97 (Ct. App. 2002). We find *Hauser's* holding regarding the knowledge element persuasive and we adopt it here.

Campbell cites a handful of federal cases to support her position that the district court should have given a separate instruction that required the jury to find the State had proved Cross committed burglary or aggravated battery beyond a reasonable doubt. *See United States v. Innie*, 7 F.3d 840, 850 (9th Cir. 1993); *United States v. De La Rosa*, 171 F.3d 215, 221 (5th Cir. 1999); *United States v. Rivera-Figueroa*, 149 F.3d 1, 6 n.5 (1st Cir. 1998); *United States v. Lepanto*, 817 F.2d 1463, 1467 (10th Cir. 1987); *United States v. Cruz-Santiago*, 330 F. Supp. 2d 26, 28 (D. P.R. 2004). However, these cases do not support Campbell's argument that the district court needed to instruct the jury on the elements of burglary and aggravated battery, as it related to Cross.

*Cruz-Santiago* may be the closest case on point. There, the defendant was charged and convicted of accessory after the fact by providing assistance to a fugitive charged with conspiracy to possess a controlled substance with the intent to distribute. *Cruz-Santiago*, 330 F. Supp. 2d at 27. On appeal, the defendant challenged the sufficiency of the evidence to sustain her conviction for accessory after the fact. *Id.* The court brushed aside the government's argument that focused on the defendant's mere knowledge that the offense had been committed. *Id.* at 27-28. The court noted that " 'commission of the underlying offense is a prerequisite for conviction as an accessory after the fact.' " *Id.* at 28 (quoting *Innie*, 7 F.3d at 850). The court reiterated the three elements the government must prove to establish an accessory after-the-fact conviction "

'(1) the commission of an underlying offense against the United States; (2) the defendant's knowledge of that offense; and (3) assistance by the defendant in order to prevent the apprehension, trial, or punishment of the offender.' " *Id.* (quoting *De La Rosa*, 171 F.3d at 221). The court found that there was insufficient evidence for a jury to find the first element - that there was a commission of an underlying offense against the United States. *Id.* The court importantly stated:

> While it is true that '[c]onviction of the principal is not a necessary condition precedent to the conviction of an accessory after the fact' *U.S. v. Walker*, 415 F.2d 530 (9th Cir. 1969), the Court cannot sustain a conviction without any evidence that Diaz-Rivera voluntarily conspired to possess with the intent to distribute heroine [sic], cocaine, crack cocaine, and marijuana as stated in his indictment. For example, a review of the record indicates that *there was no circumstantial or direct evidence presented at trial to determine whether Diaz-Rivera acted alone or whether he had entered into a voluntary agreement with one or more individuals* which ultimately is the essence of a conspiracy.

*Id.* Similarly, in *Rivera-Figueroa*, the court noted in a footnote that, "[t]he accessory-after-the-fact offense does have some elements in common with the principal crime insofar as it requires proof of the substantive offense *by someone* . . . ." 149 F.3d at 6 n.5 (emphasis added). It did not discuss the issue further.

These authorities cited by Campbell actually support the district court's jury instructions, as given. There must be evidence of the underlying felony and its commission "*by someone,*" in order to sustain an accessory conviction. *Id.* (emphasis added). This can be done by "circumstantial or direct evidence presented at trial" demonstrating the principal's culpability. *Cruz-Santiago*, 330 F. Supp. 2d at 28. Here, that standard was met because the district court required the jury to find beyond a reasonable doubt that Campbell had knowledge that someone committed an aggravated battery or burglary. Therefore, to find that Campbell was an accessory, it was not necessary for the jury to make a specific finding that Cross was the principal.

Similarly, the Idaho Criminal Jury Instructions, which this Court generally presumes to be correct, only require *a* felony to have been committed, not a conviction of the actual principal who committed the felony. *Mann*, 162 Idaho at 43; *McKay v. State*, 148 Idaho 567, 571 n.2, 225 P.3d 700, 704 n.2 (2010). ICJI 310 suggests the following instruction:

> A person who knows a felony was committed, and willfully conceals it from a [peace officer] [judge] [magistrate] [grand jury] [petit jury] [or] [harbors and protects the person charged with or convicted thereof,] is guilty of an accessory.

ICJI 310. Cross' identity as the principal was not a prerequisite to Campbell's conviction as an accessory. Therefore, the district court did not err in refusing to give Campbell's proposed instructions, which would have required the jury to find beyond a reasonable doubt, "as related to Matthew Cross," that he committed the battery.

The district court's instructions, although formatted differently than ICJI 310, were appropriate because: (1) they were consistent with the plain language of the statute, (2) they reflected persuasive authorities that require proof the underlying crime was committed "*by someone*" rather than conviction of the principal, and (3) the instructions mirrored the relevant Idaho Criminal Jury Instructions. The jury was instructed on the elements of the crime of accessory to a felony, as follows:

> In order for the defendant to be guilty of Accessory to a Felony, the State must prove each of the following:
> 1. On or about December 24, 2017
> 2. in the state of Idaho
> 3. the defendant Carli Joann Campbell while
> 4. having knowledge that an Aggravated Battery and/or Burglary had been committed
> 5. did willfully withhold or conceal knowledge of such Aggravated Battery and/or Burglary from a peace office or officers.
>
> *If any of the above has not been proven beyond a reasonable doubt*, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.

(Emphasis added). Campbell ignores the language at the bottom of the district court's instructions that requires the jury to find *each element* – including the fact that an Aggravated Battery or a Burglary had been committed – beyond a reasonable doubt. This instruction clearly requires the jury to find commission of the underlying offense beyond a reasonable doubt. Thus, this instruction required the State to prove all the necessary elements.

Furthermore, the district court followed the ICJI definitions of Aggravated Battery and Burglary in instructing the jury, which define those terms as follows:

> In order for a person to be guilty of Aggravated Battery, the State must prove each of the following:
> 1. On or about a time
> 2. in the state of Idaho
> 3. a person committed a battery upon another,
> 4. when doing so said person caused great bodily harm
> . . . .
> A "battery" is committed when a person:

(1) willfully and unlawfully uses force or violence upon the person of another; or

(2) actually, intentionally and unlawfully touches or strikes another person against the will of the other; or

(3) unlawfully and intentionally causes bodily harm to an individual

. . . .

In order for a person to be guilty of Burglary, the State must prove each of the following:

1. On or about a time
2. in the state of Idaho
3. a person entered a home, and
4. at the time entry was made said person had the specific intent to commit a felony.

*See* ICJI 511, 1203, 1207. Therefore, the jury was informed of the required elements of aggravated battery and burglary, and it was instructed as an element to accessory that one of those crimes had to have been committed beyond a reasonable doubt.

When read as a whole, the jury instructions correctly stated the law. *State v. Medina*, 165 Idaho 501, 507, 447 P.3d 949 955 (2019). While we acknowledge that it might be ideal to either try both the principal and the accessory together, or first obtain a conviction of the principal before proceeding to trial with the accessory, it is not required. There is simply no requirement that the State must prove the identity of the principal, or establish their guilt beyond a reasonable doubt. Accordingly, we conclude that the jury instruction given to the jury by the district court properly reflected the law.

**B. Due to the uncontroverted and overwhelming evidence of guilt, the alleged errors in the jury instructions were harmless.**

Even if we were to find that the district court's jury instructions were somehow erroneous for leaving out a required element, we must still determine whether the totality of the record would render such error harmless. "In instances where erroneous jury instructions were provided at trial, an appellate court must first determine whether an improper jury instruction affected the entire deliberative process." *State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2008). If the improper jury instruction was so fundamentally flawed that it affected the entire deliberative process, then reversal is required. *Id.* However, in cases

> where the jury instructions were only partially erroneous, such as where the jury instructions improperly omitted one element of a charged offense, the appellate court may apply the harmless error test, and where the evidence supporting a finding on the omitted element is overwhelming and uncontroverted, so that no

rational jury could have found that the state failed to prove that element, the constitutional violation may be deemed harmless.

*Id.* For the reasons discussed below, we find that the record in this case presents a compelling basis for finding that Campbell knew, yet concealed her knowledge, that a felony had been committed.

First, although Campbell contends that she contested the evidence presented by the State on both the aggravated battery and burglary charges at trial, she called no witnesses, presented no evidence, and only claims that she contested the evidence through her closing argument. We reject this argument because it is a fundamental principle that the closing arguments of counsel are not evidence, as the jury in this case was specifically instructed. *See* ICJI 202. While Campbell pleaded not guilty, thereby requiring the State to present sufficient evidence to prove its case beyond a reasonable doubt, she made no attempt to rebut any of the State's evidence with evidence of her own. Therefore, the evidence of guilt in the record before us is almost entirely uncontroverted.

Second, turning to the weight of the evidence presented by the State in this case, it was so overwhelming that no rational jury could have found that the State had failed to meet its burden on every element. Narrowing the scope of our analysis to just the underlying acts by Campbell sufficient to prove the charge of accessory to an aggravated battery, the evidence was conclusive. In sum, the State presented substantial and competent evidence that on December 24, 2017, in the state of Idaho, Campbell had knowledge that a battery had been committed upon Renaud and the battery had caused Renaud great bodily harm, and Campbell willfully withheld and concealed knowledge of the crime from law enforcement every time she was questioned. *See* I.C. § 18-205(1).

For example, the State presented substantial and competent evidence for a rational jury to have found that Campbell had knowledge of the circumstances related to the aggravated battery committed against Renaud. The evidence, again wholly unrebutted at trial, showed that Campbell told Renaud he would get his "ass kicked" if he did not leave. Later, Renaud awoke to see Cross enter through the front door, point at him, and then "bull rush" him. Campbell, despite initially denying any knowledge of the incident, later reported to law enforcement that Renaud was punched and kicked by an unknown random stranger. Renaud identified Cross as his assailant to law enforcement at the hospital. The crime was an aggravated battery—a felony— because Cross caused great bodily harm in commission of the battery, to wit: Cross broke

Renaud's jaw and fractured his sinus; Renaud underwent two surgeries to fix his jaw, which included doctors installing metal plates; during recovery from surgery, Renaud lost weight, suffered great pain, and he could not work; he could barely communicate; and Renaud's jaw shape has been permanently altered.

Additionally, the State presented persuasive evidence that not only showed that Campbell had knowledge of the aggravated battery, but it also demonstrated she may have facilitated the attack. At the very least, the evidence strongly supports the conclusion that she concealed and withheld the full extent of her knowledge about the crime from police officers. For example, the jury heard evidence that Campbell became angry after Renaud cuddled up to her female friend and suggested a "threesome." Campbell then demanded that Renaud leave but he refused. Cell phone records confirm she then made at least two phone calls to Cross. The evidence suggested that Campbell was not only in a sexual relationship with Renaud at the time, but she had been similarly involved with Cross. After the calls with Cross, she warned Renaud that he would get his "ass kicked" if he did not leave. Shortly thereafter, Cross appeared at Campbell's house and battered Renaud until he was unconscious. When police arrived, Campbell's story constantly changing. For instance, she initially told Deputy Brock she had not seen what happened or who did it. Yet, Campbell told medical personnel that Renaud had been punched and kicked. Campbell later told Deputy Brock that she saw "a person" kick Renaud. Later on, Campbell told a different officer, while describing the incident, that "*he*" punched and "*he*" kicked Renaud. When directly confronted, Campbell continuously denied any knowledge of what happened, apparently forgetting that she had earlier reported to the 911 operator that there was a motive for the crime: "there was like a dispute over a girl and someone got punched."

After the incident, telecommunication records confirmed that Campbell and Cross exchanged multiple text messages, including one in which Campbell texted Cross: "Actually was looking forward to you fucking him up. You are a great man *wish I could have seen that.*" (Emphasis added). Cross replied, "Lmfao I bet." Campbell also said, "He was so scared" and "I am like upset that he's gonna [sic] keep his teeth." The analysis of Cross' cell phone records showed that before the incident, Cross' phone was operating on the north side of Coeur d'Alene. However, around the time of the battery, Cross' phone was operating in a sector on the north side of Hayden, near the incident. Between the time of the incident and the time police seized Campbell's phone pursuant to a warrant, records show that Campbell made many internet

searches relating to whether police can subpoena text messages, and how to delete text messages. Most importantly, Campbell's text messages to Cross, recorded jail phone calls with Cross and her husband, and post-incident internet searches all show that she knew the aggravated battery occurred and was actively attempting to conceal the full extent of her knowledge from law enforcement.

In sum, this Court concludes that the district court properly rejected Campbell's proposed jury instructions and correctly instructed the jury as required by Idaho Code section 18-205(1) and applicable precedent. Even if the district court somehow erred in its jury instruction, there was overwhelming evidence of guilt presented at trial to satisfy each and every element of the crime, thus satisfying the standard for harmless error. *Perry*, 150 Idaho at 224, 245 P.3d at 976.

## IV. CONCLUSION

For the foregoing reasons, this Court affirms the conviction and judgment of the district court.

Chief Justice BEVAN and Justices BURDICK, BRODY and STEGNER **CONCUR.**