# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47642

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, November 2021 Term |
| | ) | |
| v. | ) | Opinion Filed: March 1, 2022 |
| | ) | |
| MICHAEL RYAN MCDERMOTT, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Barbara A. Buchanan, District Judge.

The judgment of the district court is vacated.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant Michael Ryan McDermott. Jenevieve C. Swinford argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho. Kale Gans argued.

_____

STEGNER, Justice.

Michael McDermott appeals his conviction for second-degree murder. McDermott arrived at his ex-girlfriend's home late at night in the hopes of obtaining methamphetamine. After finding another man, Robert Waholi, inside the ex-girlfriend's recreational vehicle ("RV"), McDermott slammed his ex-girlfriend's head twice in her front door, causing her to fall. McDermott exited the RV and then, a few moments later, Waholi came out carrying a large double-edged axe. McDermott shot Waholi through the heart, killing him. McDermott eventually confessed to the police that he had killed Waholi; however, he claimed he was acting in self-defense.

At trial, the district court instructed the jury on McDermott's self-defense theory, including an instruction that the jury could not find McDermott acted in self-defense if it found that McDermott was the "initial aggressor" in the altercation with Waholi. McDermott objected both to the "initial aggressor" instruction itself as well as the wording of the instruction. The district court also instructed the jury using Idaho Criminal Jury Instruction 702 on "malice," the requisite intent needed for second-degree murder. During its deliberations, the jury asked for clarification

1

on malice, which the district court provided over McDermott's objection. The jury ultimately found McDermott guilty of second degree-murder. McDermott timely appealed. For the reasons discussed below, we vacate McDermott's conviction and remand the case for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

It is undisputed that, early in the morning of March 15, 2019, McDermott shot and killed Waholi. Alicia Flynn had previously dated both McDermott and Waholi but was not actively dating either man in March 2019. The night before the shooting, March 14, 2019, at around 7:00 or 8:00 p.m., Waholi arrived at Flynn's home—an RV trailer parked at Evergreen Towing. Waholi and Flynn reconciled, used methamphetamine, and eventually went to bed. That same night, around 10:00 p.m., Flynn was also communicating with McDermott through text messages. Flynn was planning to move from Idaho to California, but her RV was not in drivable condition. She planned to clean up the RV in order to sell it, and McDermott offered to bring Flynn some cleaning supplies in exchange for drugs.

McDermott arrived at Flynn's RV hours later, around 3:00 a.m. the morning of March 15, 2019. At that time, Flynn and Waholi were already in bed and about to go to sleep. McDermott knocked on the trailer door and, though she initially ignored the knocking due to the late hour, Flynn eventually answered the door. McDermott and Flynn then walked through the grounds of Evergreen Towing to a different trailer to ask its occupant for drugs. When the occupant of the other trailer did not answer the door, both McDermott and Flynn walked back to Flynn's RV. McDermott was aware that Flynn had a male guest in her RV and, as the two walked back to her RV, he asked her who it was. Flynn responded, "The Easter Bunny, Santa Claus. It's none of your business." Once they were back at the RV, McDermott opened the door and asked who was inside. Waholi answered that he was in the RV.

After this exchange, Flynn attempted to get inside the RV but McDermott slammed her head inside the door twice.[1] As Flynn fell inside the RV and held her head, Waholi got out of bed and McDermott walked away from the door. While McDermott was outside, Waholi grabbed a large, double-edged axe and left the RV. McDermott then shot Waholi through the heart, killing him. The amount of time that elapsed between Flynn's head getting slammed in the door and the gunshot is disputed.

---

[1] At trial, McDermott denied doing so; however, he concedes on appeal that he slammed the door on Flynn's head.

The State obtained an indictment charging McDermott with second-degree murder.[2] McDermott pleaded not guilty, and the case was set for trial. The jury trial began on September 30, 2019, and lasted for five days, ending on October 4, 2019. The crux of the case at trial was whether McDermott shot Waholi in self-defense. In his opening statement, McDermott's attorney told the jury that after Flynn was hit with the door,

> [t]he door bounced open. You'll see the trailer. It's a flimsy door that opens out, and [McDermott] kicked it shut again. [McDermott] left. He was walking away. The door was shut. [Waholi] threw open the door, came at [McDermott] with a double-headed axe raised over his head. [McDermott] thought he was going to die. He was going to get that axe in his forehead. He shot him in the heart. He stood his ground.

> When you hear all of the evidence, you will find Michael McDermott exercised his right to defend himself and find him not guilty of second degree murder.

McDermott testified in his own defense. McDermott testified that everything "happened in seconds" and that he "thought [Waholi] was going to chop him with an axe." He further testified that he believed Waholi was an immediate threat and he thought he was going to die.

After the close of evidence, the parties and the district court took up the issue of the final jury instructions. The district court stated it

> intend[ed] to instruct the jury that the first issue is whether they find that the killing in this case was justified by self-defense; and if they do, they stop. . . . But if they do not, if they find that self-defense doesn't apply, then [] McDermott could be found guilty of second degree murder, he could be found guilty of voluntary manslaughter because the [c]ourt finds there was testimony about – you could find heat of passion – and they could find that the killing was without malice aforethought. That's the only difference between second degree murder and voluntary manslaughter.

Prior to trial, the State had drafted a jury instruction that stated a defendant is not entitled to claim self-defense if he was the initial aggressor and did not withdraw from the original conflict or communicate that withdrawal. The instruction stated in full:

> If you believe from the evidence beyond a reasonable doubt, that the defendant was the initial aggressor, then for him to be justified in using self-defense to commit the homicide, you must find all of the following occurred:

> 1. The defendant first withdraws from further aggressive action, and;

---

[2] McDermott was also indicted for the failure to report Waholi's death. The jury found him guilty on that charge (as well as second degree murder). McDermott moved for a new trial on the charge of failure to report Waholi's death. The district court concluded there was a Fifth Amendment self-incrimination issue and set aside the conviction. The failure to report a death charge has no bearing on this appeal.

3

2. The defendant communicates his withdrawal from further aggressive action to the victim by word or act.

The "initial aggressor" is the person who first acts in such a manner that creates a reasonable belief in another person's mind that deadly force is about to be used on that other person. The actual striking of the first blow or inflicting of the first wound, however, does not necessarily determine who the initial aggressor was. Arguing, using abusive language, calling a person names or the like unaccompanied by physical threats or acts does not make a person an initial aggressor and does not justify physical force.

The district court, however, crafted its own instruction on the initial aggressor theory, "Instruction No. 22," which stated: "A person is not entitled to claim self-defense when he or she was the aggressor or the one who provoked the altercation in which another person is killed unless such person in good faith first withdraws from further aggressive action."

McDermott objected to the jury being instructed on the initial aggressor theory because the testimony had not established McDermott did anything to raise a "threat or specter of deadly force" against Waholi, thereby rendering the instruction unnecessary. McDermott further argued that, if the district court was going to overrule his first objection, the State's proposed instruction stated the law more clearly. The district court overruled both of McDermott's objections. The district court also rejected the State's proposed instruction (quoted above) and instructed the jury with its own Instruction No. 22.

During deliberations, the jury sent a question to the district court, which stated, "We are confused on the definition of malice." They asked for an additional definition, and further asked if they could "look up the definition outside [the deliberation] room at home or on the internet." McDermott objected to giving the jury any additional instructions, arguing that the jury was already fully instructed on the applicable law. The district court stated it "would like to give the jury something," and opted to instruct the jury over McDermott's objection. The district court then read "Instruction No. 29," which stated that "'[m]alice' is the intentional doing of a wrongful act without legal cause or excuse."

The jury found that McDermott had not acted in self-defense. The jury further found that McDermott was guilty of second-degree murder. The district court entered a judgment of conviction on December 3, 2019, sentencing him to 25 years, with ten of those years fixed. McDermott timely appealed.

4

## II.    STANDARD OF REVIEW

"The district court's decision whether or not to give further instructions in response to jurors' questions is discretionary." *State v. Sheahan*, 139 Idaho 267, 282, 77 P.3d 956, 971 (2003) ("*Sheahan I*"). "Therefore, this Court reviews such a decision under an abuse of discretion standard." *Id.*

> When reviewing a lower court's decision for an abuse of discretion, this Court must analyze 'whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.'

*State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

> "'Whether jury instructions fairly and adequately present the issues and state the applicable law is a question of law over which this Court exercises free review.'" *State v. Draper*, 151 Idaho 576, 587, 261 P.3d 853, 864 (2011) (quoting *State v. Humpherys*, 134 Idaho 657, 659, 8 P.3d 652, 654 (2000)). This Court looks to jury instructions as a whole, rather than individually, to determine whether they adequately present the issues and state the applicable law. *Id.* at 588, 261 P.3d at 865; *State v. Adamcik*, 152 Idaho 445, 472, 272 P.3d 417, 444 (2012). "'An erroneous instruction will not constitute reversible error unless the instructions as a whole misled the jury or prejudiced a party.'" *State v. Mann*, 162 Idaho 36, 43, 394 P.3d 79, 86 (2017) (quoting *State v. Zichko*, 129 Idaho 259, 264, 923 P.2d 966, 971 (1996)). If there is an omission of an essential element in a jury instruction this Court employs the harmless error test. *State v. Hickman*, 146 Idaho 178, 180, 191 P.3d 1098, 1100 (2008).

*State v. Campbell*, ___ Idaho ___, ___, 481 P.3d 118, 123 (2021).

## III.    ANALYSIS

On appeal, McDermott argues that multiple erroneous jury instructions rendered his trial unfair. He specifically challenges Instruction No. 29, the additional "malice" instruction, and Instruction No. 22, the "initial aggressor" instruction.

**A. The district court erroneously instructed the jury on the concept of malice.**

We first address McDermott's challenge to Instruction No. 29, the "malice" instruction. Instruction No. 29 reads in its entirety: "'Malice' is the intentional doing of a wrongful act without legal cause or excuse." McDermott argues that the district court abused its discretion by providing any additional instruction on "malice" to the jury because the concept of malice was adequately covered by the instructions already given. McDermott also contends that the wording of Instruction No. 29 was an incorrect statement of the law for three reasons. First, McDermott asserts that "the

5

instruction partially turned malice into an act." Second, McDermott argues that the instruction improperly utilized the "malice" definition for other crimes under Idaho Code section 18-101(4) rather than the "malice" definition for murder. Third, McDermott contends, the instruction "drastically lowered the jury's requisite finding for the mental state of malice" because it "removed any connection between malice and the killing."

The State responds that McDermott did not preserve his challenge to the wording of Instruction No. 29 and this Court should review that argument under a fundamental error standard rather than under an abuse of discretion standard. Citing *State v. Rogers*, 30 Idaho 259, 259, 163 P. 912, 914 (1917) and *State v. Aragon*, 107 Idaho 358, 363, 690 P.2d 293, 298 (1984), the State next contends that Instruction No. 29 was a correct statement of the law because the Idaho Supreme Court has used similar language to describe "malice" and the instruction did not include language about "an emotional response or bad motive like anger or spite." The State further asserts that the district court was within its discretion to provide the jury with additional instructions after the jury requested additional guidance "on an issue at the crux of the case[.]"

McDermott replies that he preserved his challenge to the wording of Instruction No. 29, noting that "it is simply not possible for counsel to propose alternative language" "[i]f counsel believes there is no appropriate instruction to be given[.]" McDermott further asserts that, even if he did not preserve his challenge, the wording of Instruction No. 29 still rises to the level of fundamental error. McDermott next challenges the State's reliance on *Rogers* and *Aragon*, arguing that neither case reflects an accurate statement of the current law.

As an initial matter, we conclude that McDermott adequately preserved his challenge to the wording of Instruction No. 29. "To state an arguable claim on appeal, 'both the issue and the party's position on the issue must be raised before the trial court for it to be properly preserved[.]'" *State v. Barr*, 166 Idaho 783, 786, 463 P.3d 1286, 1289 (2020), *as amended* (June 25, 2020) (quoting *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019)). At trial, McDermott objected to Instruction No. 29, arguing:

> We would be opposed to any further instruction in this case. I think the definition has already been given to them. *I also think that there is no definition other than the instruction given.*
>
> I mean, there's no definition in the ICJI. So, the Supreme Court felt that they didn't have to further define it, and I don't think it's appropriate.

(Italics added.) As McDermott points out on appeal, it is not possible for counsel to propose alternative language if counsel believes no instruction should be given. McDermott objected to the wording of the instruction, as well as the giving of the instruction. Therefore, he preserved his argument for appeal.

"'In general, it is within the trial court's discretion to determine whether, and the manner in which, to respond to a question posed by the jury during deliberations.'" *Sheahan I*, 139 Idaho at 282, 77 P.3d at 971 (quoting *State v. Pinkney*, 115 Idaho 1152, 1154, 772 P.2d 1246, 1248 (Ct. App. 1989)). "'[I]f a jury expresses doubt or confusion on a point of law correctly and adequately covered in a given instruction, the trial court in its discretion may explain the given instruction or further instruct the jury but it is under no duty to do so.'" *Id.*

We hold that the district court abused its discretion in providing the jury with the additional instruction on malice. We conclude that the district court did not "act[] consistently with the legal standards applicable to the specific choices available to it" because Instruction No. 29 was an incorrect statement of the law. *See Bodenbach*, 165 Idaho at 591, 448 P.3d at 1019 (quoting *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194). McDermott first argues that the instruction altered "intent" from an inquiry into a mental state (*mens rea*) to an inquiry into an action or conduct (*actus reus*). We agree. As McDermott points out, the language of Instruction No. 29 specifically told the jury that malice was "an intentional *doing* of a wrongful act . . ." (Italics added.) This wording essentially turned malice into an element of actus reus as opposed to mens rea. Second-degree murder is a specific intent crime, which requires the State to prove a defendant acted with the mental intent to kill the victim. *State v. Luke*, 134 Idaho 294, 300, 1 P.3d 795, 801 (2000). Under Instruction No. 29, it would be possible to convict a defendant for "intentionally" pulling the trigger, as McDermott did, without proving that the defendant acted with the mental intent to kill the victim.

McDermott next argues that Instruction No. 29 incorrectly drew from the definition of general malice, not the malice required for a specific intent crime. We also find this argument persuasive. Idaho Code section 18-101(4) provides that "[t]he words 'malice,' and 'maliciously,' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." I.C. § 18-101(4). As McDermott suggests, it is clear under Idaho case law that the "malice" required for murder is not the general malice definition provided in Idaho Code section 18-101. *Sheahan v. State*, 146 Idaho 101, 105, 190 P.3d 920, 924 (Ct. App.

7

2008) ("*Sheahan II*"). This is because "malice aforethought as used in the homicide statutes 'imports something more than a "wish to vex, annoy, or injure another person."'" *Id.* (quoting *State v. Dillon*, 93 Idaho 698, 713, 471 P.2d 553, 568 (1970)). Instead, the correct statutory definition of malice in a homicide case is found in Idaho Code section 18-4002, which provides: "Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." I.C. § 18-4002.

Here, as the State points out, nothing in Instruction No. 29 suggests that the definition of malice includes "a wish to vex, annoy, or injure another person." However, the last part of Idaho Code section 18-101(4) specifically provides that general malice is "an intent to do a wrongful act." Instruction No. 29 uses the last part of section 18-101(4) almost verbatim: "'Malice' is *the intentional doing of a wrongful act* without legal cause or excuse." (Italics added.)

McDermott finally argues that Instruction No. 29 "removed any connection between malice and the killing[.]" We agree. Instruction No. 29 requires the jury to find the "intentional doing of a wrongful act," but does not specify that the "wrongful act" must be either the specific act of killing or the intentional act that resulted in the killing.

The State points out that the jury was specifically instructed, via Instruction No. 13, that "there must exist a union or joint operation of act and intent." It is true that "[t]his Court looks to jury instructions as a whole, rather than individually, to determine whether they adequately present the issues and state the applicable law." *Campbell*, ___ Idaho at ___, 481 P.3d at 123. However, Instruction No. 13 simply connects intent with an act, not the specific act of killing or the intentional act that resulted in the killing. Instruction No. 29 erroneously divorces malice from the killing, and Instruction No. 13 does not cure that defect. Therefore, we hold that Instruction No. 29 was an incorrect statement of law, and the district court did not "act[] consistently with the legal standards applicable to the specific choices available to it[.]" *See Bodenbach*, 165 Idaho at 591, 448 P.3d at 1019 (quoting *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194).

Therefore, we hold that the district court abused its discretion when it gave the jury an additional, improper malice instruction (Instruction No. 29).

**B. The erroneous "malice" instruction rendered McDermott's trial unfair.**

McDermott argues that Instruction No. 29 "impermissibly lowered the State's burden on an essential element of second-degree murder." McDermott asserts that, due to Instruction No. 29, the jury was able to find McDermott guilty of second-degree murder without finding malice aforethought, an essential element of second-degree murder.

The State responds that any error in giving Instruction No. 29 was harmless because "[j]ury instructions must be considered together as a whole." The State points to Instruction No. 15, arguing that it comports with the statutory definition of malice required for homicide in Idaho Code section 18-4002. Citing *State v. Dillon*, 93 Idaho 698, 714, 471 P.2d 553, 569 (1970), the State asserts that, because the jury was correctly instructed based on the instructions as a whole, McDermott was not prejudiced by any error in Instruction No. 29. The State further argues that any error in the wording of Instruction No. 29 was harmless because the jury instructions as a whole adequately instructed the jury on the applicable law.[3]

In reply, McDermott asserts Instruction No. 29 was a "replacement instruction" that caused "the jury [to] presumably jettison[] the old, confusing one and appl[y] the new one to the facts." McDermott points to *State v. Luke*, 134 Idaho 294, 301, 1 P.3d 795, 802 (2000) and contends that, because there is uncertainty as to which theory of malice by which the jury convicted McDermott, any error is not harmless.

> [I]n instances where erroneous jury instructions were provided at trial, an appellate court must first determine whether an improper jury instruction affected the entire deliberative process. If it did, then a reversal is necessary as the jury's deliberations were fundamentally flawed, and any attempted harmless error inquiry would essentially result in the appellate court itself acting in the role of jury. However, where the jury instructions were only partially erroneous, such as where the jury instructions improperly omitted one element of a charged offense, the appellate court may apply the harmless error test, and where the evidence supporting a finding on the omitted element is overwhelming and uncontroverted, so that no rational jury could have found that the state failed to prove that element, the constitutional violation may be deemed harmless.

*State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010). In cases of a partially erroneous instruction, "the essential inquiry is whether it is 'clear beyond a reasonable doubt that a *rational* jury would have found the defendant guilty absent the error.'" *Id.* at 223, 245 P.3d at 975 (quoting

---

[3] We note that the State argues this issue under a fundamental error standard. However, as discussed above, we conclude that McDermott adequately preserved his argument. Therefore, it is reviewed under the harmless error standard.

*Neder v. United States*, 527 U.S. 1, 18 (1999)) (italics original to *Perry*). "'An erroneous instruction will not constitute reversible error unless the instructions as a whole misled the jury or prejudiced a party.'" *State v. Mann*, 162 Idaho 36, 43, 394 P.3d 79, 86 (2017) (quoting *State v. Zichko*, 129 Idaho 259, 264, 923 P.2d 966, 971 (1996)).

In general, this Court "presume[s] that the jury followed the jury instructions given by the trial court in reaching its verdict[.]" *State v. Carson*, 151 Idaho 713, 718, 264 P.3d 54, 59 (2011). However, only "[w]here the jury instructions, taken as a whole, correctly state the law *and are not inconsistent*" will it "be assumed that the jury gave due consideration to the whole charge contained in all the instructions and was not mislead by any isolated portion thereof." *State v. Medina*, 165 Idaho 501, 510, 447 P.3d 949, 958 (2019) (quoting *State v. Draper*, 151 Idaho 576, 590, 261 P.3d 853, 867 (2011)) (italics added, additional alteration in original).

Here, it is undisputed that the jury was correctly instructed on express and implied malice under Idaho Code section 18-4002 via Instruction No. 15. That instruction, which was given to the jury prior to the start of deliberations, provided in full:

> Malice may be express or implied.
>
> Malice is express when there is manifested a deliberate intention unlawfully to kill a human being.
>
> Malice is implied when:
>
> 1. The killing resulted from an intentional act,
>
> 2. The natural consequences of the act are dangerous to human life, and
>
> 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.
>
> When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought. The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person killed.

However, Instruction No. 29 provided the jury with an alternative definition of malice inconsistent with the definition provided in Instruction No. 15. As discussed above, Instruction No. 29 required merely an "intentional doing of a wrongful act" which transforms malice aforethought into an element of actus reus rather than mens rea. Instruction No. 15, on the other hand, explicitly requires an "intentional doing of an act *with* express or implied malice." (Italics added.) Additionally, Instruction No. 29 simply requires a "wrongful act," but makes no mention of "killing," as is required for both express and implied malice under Instruction No. 15. Under

10

Instruction No. 15, express malice requires a finding that there existed "a deliberate intention unlawfully to *kill* a human being." (Italics added.) Implied malice requires that "the *killing* resulted from an intentional act" which "was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." (Italics added.) Instruction No. 29 thereby drastically reduced the burden of proof on the State with respect to the malice element.

These inconsistencies are particularly troubling because Instruction No. 29 was only given to the jury after it had notified the district court that it was confused about the malice definition provided in Instruction No. 15. While we do not hold that every erroneous instruction given in response to a jury question renders a trial presumptively unfair, the circumstances of this case support such a conclusion. Given the level of inconsistency between the correct malice instruction (Instruction No. 15) and Instruction No. 29, coupled with the fact that the jury was clearly struggling with the definition of malice—which was the only difference in whether the jury found that the State had proven second-degree murder or voluntary manslaughter—we cannot say with any confidence which instruction the jury followed. If the jury followed Instruction No. 29, which was certainly the easier instruction by which the jury could find McDermott guilty of second-degree murder, it is possible that the jury could have found that McDermott "intentional[ly] d[id] a wrongful act without legal cause or excuse" by slamming Flynn's head in the trailer door, pointing the gun at Waholi, or generally firing the gun, none of which would be sufficient to sustain a conviction for second-degree murder.

Therefore, we cannot conclude it is clear beyond a reasonable doubt that a rational jury would have found McDermott guilty of second-degree murder absent the erroneous instruction. Accordingly, we vacate his conviction and remand the case for a new trial.

### C. McDermott has failed to establish that the district court erroneously instructed the jury on whether he was an "initial aggressor." However, because McDermott is entitled to a new trial, we provide guidance on remand.

McDermott also challenges Instruction No. 22, the "initial aggressor" instruction. This instruction reads in its entirety: "A person is not entitled to claim self-defense when he or she was the aggressor or the one who provoked the altercation in which another person is killed unless such person in good faith first withdraws from further aggressive action." McDermott argues that Instruction No. 22 "did not tell the jury that a defendant only loses the ability to claim self-defense if he provokes a deadly (or likely deadly) altercation with the victim." Because Instruction No. 22 "made the intensity, extent, or timing of the provocation or aggression irrelevant," McDermott

11

contends that the instruction "precluded [him] from claiming the right to self-defense when his level of provocation or aggression was *not* deadly force or serious bodily injury." (Italics in original.)

The State responds that Idaho "case law and [Idaho Code section 18-4009(1)(c), the justifiable homicide statute,] imply violence in the first act of aggression" but that there is no requirement that the act rise to the level of *deadly* violence. The State points out that Instruction No. 22 is virtually identical to language from *State v. Turner*, 136 Idaho 629, 634–35, 38 P.3d 1285, 1290–91 (Ct. App. 2001), which this Court "quoted with approval in *Bodenbach*," 165 Idaho at 584, 488 P.3d at 1012. The State further asserts that McDermott's argument assumes that the act of violence needs to be directed at the eventual homicide victim.

In response, McDermott reasserts that Instruction No. 22 "was impermissibly broad" because "[a]n initial aggressor must engage in a level of aggression or provoke the type of altercation that raises a threat or fear of deadly force or serious bodily harm, along with an intent to do such harm." McDermott argues that, while the case law and self-defense statute may imply violence as the State suggests, Instruction No. 22 "was not confined to an attack or violence." Additionally, McDermott states that "'the intended purpose of [Idaho Code section 18-4009(1)(c)]' was to prevent a defendant from claiming self-defense when he created 'necessity for the victim's use of self-defense.'" *Bodenbach*, 165 Idaho at 587, 488 P.3d at 1015. McDermott contends that this requires that the initial act of violence must be "deadly." McDermott also points out that *Bodenbach's* quotation of *Turner* was not a quotation of an approved jury instruction but of a "general legal principle," which is not enough to guide a jury. McDermott also clarifies that he did not "erroneously exclude[] the 'defense of others' principle from his initial aggressor discussion," as the State contends. Rather, McDermott argues, that principle "has no application here" because too much time had passed between the slamming of the door on Flynn and the altercation between McDermott and Waholi.[4]

"Jury instructions, when considered as a whole, are meant to fairly and adequately present the issues and state the applicable law." *Medina*, 165 Idaho at 508, 447 P.3d at 956.

> An erroneous jury instruction violates due process if it omits a contested element of a crime or if it relieves the State of the burden of proving every element of the

---

[4] At oral argument before this Court, McDermott conceded that the district court correctly determined that giving the jury *an* initial aggressor instruction was appropriate based on the facts of this case but maintained that the wording of the instruction actually given was not appropriate.

crime beyond a reasonable doubt. *State v. Draper*, 151 Idaho 576, 588, 261 P.3d 853, 865 (2011). "[T]he State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Id.* (quoting *State v. Anderson*, 144 Idaho 743, 749, 170 P.3d 886, 892 (2007)).

*Id.* at 509, 447 P.3d at 957. "'Whether the instruction was erroneous will depend upon how a reasonable juror would have interpreted the instruction.'" *Bodenbach*, 165 Idaho at 585, 448 P.3d at 1013 (quoting *State v. Skunkcap*, 157 Idaho 221, 227–28, 335 P.3d 561, 567–68 (2014)).

Under Idaho law, a homicide committed in self-defense may be justifiable. I.C. § 18-4009(1)(c). Thus, "the lack of justification, i.e., whether the defendant killed in self-defense, is an essential element for a murder conviction." *Bodenbach*, 165 Idaho at 587, 448 P.3d at 1015. Idaho Code section 18-4009(1)(c) provides that a person may escape criminal liability for homicides committed in self-defense so long as the person, "if he was the assailant[,]" "really and in good faith [] endeavored to decline any further struggle before the homicide was committed[.]" I.C. § 18-4009(1)(c).

Our case law has previously defined an initial aggressor: "[A] defendant 'is not entitled to claim self-defense or justify a homicide when he or she was the aggressor or the one who provoked the altercation in which another person is killed, unless such person in good faith first withdraws from further aggressive action.'" *Bodenbach*, 165 Idaho at 585, 448 P.3d at 1013 (quoting *State v. Turner*, 136 Idaho 629, 634-35, 38 P.3d 1285, 1290-91 (Ct. App. 2001)). We agree with the State that, while there is an implication of violence and aggression in the definition of an initial aggressor, there is no requirement that an initial aggressor act with *deadly* force.

McDermott asserts that "a person with a political sign in his front yard would lose the right to self-defense if that sign so provokes his neighbor as to respond with deadly force" and points to other extreme examples. His argument misses the mark. No reasonable juror would interpret Instruction No. 22 to conclude a person with an offensive sign in his yard was "the aggressor or the one who provoked the altercation." *See Bodenbach*, 165 Idaho at 585, 448 P.3d at 1013 ("'Whether the instruction was erroneous will depend upon how a *reasonable juror* would have interpreted the instruction.'") (quoting *Skunkcap*, 157 Idaho at 227–28, 335 P.3d at 567–68) (italics added).

We hold that, under the arguments he presented to this Court, McDermott has failed to establish the district court erroneously instructed the jury on whether McDermott was the initial aggressor. However, we note additional substantive problems regarding the district court's initial

aggressor instruction. Because this instruction may play an important part in McDermott's new trial upon remand, we take this opportunity to provide guidance to the district court for the necessary re-trial. *See Clark v. Klein*, 137 Idaho 154, , 45 P.3d 810 (2002) ("[W]here an appellate court reverses or vacates a judgment upon an issue properly raised, and remands for further proceedings, it may give guidance for other issues on remand.") (quoting *Urratia v. Blaine Cnty.*, 134 Idaho 353, 359, 2 P.23d 738, 744 (2000)); *see also State v. Field*, 144 Idaho 559, 573, 165 P.3d 273, 287 (2007).

While we recognize that there is no pattern jury instruction regarding an initial aggressor, we nevertheless conclude the State's proposed initial aggressor instruction more accurately captures the law than the instruction given to the jury in this case (with several notable exceptions) for various reasons. First, the State's proposed instruction correctly makes clear that the jury must find that a defendant is an initial aggressor "beyond a reasonable doubt." The burden of proof in a murder trial is on the State: "the State must prove beyond a reasonable doubt that the killing was not justified." *Bodenbach*, 165 Idaho at 587, 448 P.3d at 1015. Instruction No. 22, at the very least, does not mention a burden of proof and at most, seems to place the burden on the defendant: "A person is *not entitled to claim self-defense* when he or she was the aggressor[.]" While the jury was instructed in Instruction 14 that the State must prove "the defendant acted without justification or excuse," it is not clear that the jury understood that the State had to prove McDermott was the initial aggressor beyond a reasonable doubt.

We further note that the State's proposed instruction accurately provides that a defendant found to be an initial aggressor is still able to claim self-defense if he "communicates his withdrawal from further aggressive action to the victim by word or act." This communication requirement is consistent with this Court's case law. *Bodenbach*, 165 Idaho at 586–87, 448 P.3d at 1014–15. Instruction No. 22 contains no such requirement.

Finally, while we have concluded there is no requirement that an initial aggressor act with *deadly* violence, we note that there is a requirement for violence. We agree with the State's proposed instruction that "[a]rguing, using abusive language, calling a person names or the like unaccompanied by physical threats or acts does not make a person an initial aggressor and does not justify physical force." Thus, while we noted it was not reversible error for Instruction No. 22 to omit a deadly force requirement, we think that the State's proposed instruction is clearer as to what the burden of proof is, who bears that burden of proof, and what sort of conduct rises to the

14

level required for an initial aggressor to nevertheless resurrect a claim of self-defense. In sum, minus the "deadly force" language and inclusion of the possibility that the victim's action could be in defense of others, the State's proposed instruction represents a more accurate statement of the law as it relates to the potential loss of a self-defense claim by an initial aggressor. Therefore, should the district court determine an initial aggressor instruction[5] is warranted at McDermott's new trial, the following presents a more accurate statement of the law as it relates to an initial aggressor and whether self-defense would be available to a person who is an initial aggressor:

> The defendant has claimed he killed the victim in self-defense. Self-defense is a defense that is unavailable to a person who is the initial aggressor unless certain conditions are met. A person is the initial aggressor if he was the one who provoked the altercation in which another person is killed. Arguing or using abusive language does not make a person an initial aggressor.
>
> It is the State's burden to prove the defendant was the initial aggressor. If you determine the defendant was not the initial aggressor, you may proceed to a determination of whether he acted in self-defense. However, if you believe from the evidence beyond a reasonable doubt that the defendant was the initial aggressor, then he is not entitled to claim self-defense unless you find both of the following occurred:
>
> 1. The defendant first withdrew from further aggressive action, and;
>
> 2. The defendant communicated his withdrawal from further aggressive action to the victim by word or act.
>
> If you find that both occurred, you may proceed to a determination of whether the defendant acted in self-defense. If, however, you find that either did not occur, the defendant may not claim self-defense, and you should not consider whether the defendant acted in self-defense in your determination of the facts of this case.

## IV. CONCLUSION

For the reasons stated above, we vacate McDermott's conviction. The case is remanded for further proceedings consistent with this opinion.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.

---

[5] Though we discuss only a correct initial aggressor instruction to be used on remand, it is still the duty of the district court to instruct the jury as to any additional matters of law—for example, mutual combat—supported by the evidence elicited at the new trial. *See* I.C. § 19-2132; ICJI 1521.

15